564 A.2d 489

**COMMONWEALTH of Pennsylvania**

v.

**Eddie James PERDUE, Appellant.**

Superior Court of Pennsylvania.

Submitted April 3, 1989.

Filed Aug. 24, 1989.

476

Dennis M. DiMartini, Monaca, for appellant.

Theresa Dukovich–Ferris, Dist. Atty., Aliquippa, for Com., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and WATKINS, JJ.

OLSZEWSKI, Judge:

This is an appeal from a trial court order denying appellant's petition for relief under the Post Conviction Hearing Act (PCHA) and granting appellant the right to appeal *nunc pro tunc* those issues raised at trial. Appellant presents ten issues for our review:

1. whether the trial court erred in refusing to suppress all evidence, including items seized on August 31, 1986, specifically including the contents of a trash bag located in a garage can under the porch of the parsonage and all testimony regarding the same;

2. whether the trial court erred in refusing to suppress all defendant's statements of September 2, 1986, relating to the items seized from the premises of the parsonage on August 31, 1986;

3. whether the trial court erred in refusing to suppress all items seized on October 24, 1986, during a warrantless search, and all testimony regarding the same;

4. whether the trial court erred in refusing to permit appellant to cross-examine Aaron Blocker (hereinafter "Blocker") regarding his "drug problem" and use of drugs on the night of the incident;

5. whether the trial court erred in refusing to permit appellant to cross-examine Blocker, regarding the status of Blocker's convictions, including retail theft convictions, for the purpose of eliciting Blocker's probation or parole status;

6. whether the trial court erred in refusing to grant a mistrial after the testimony of Solomon Liggett referred to alleged prior criminal activity by appellant;

7. whether any of the counts of criminal mischief and the two counts of institutional vandalism merge for purposes of sentence;

8. whether the sentence pertaining to appellant's conviction of institutional vandalism is illegal in that the sentence exceeds the maximum for the grade of misdemeanor of second degree;

9. whether trial counsel was ineffective for failing to object to cross-examination of appellant regarding his whereabouts after parting company with Reverend Bolden after 12:45 a.m. on August 31, 1986; and

10. whether trial counsel was ineffective for failing to object to cross-examination of appellant regarding the opening of bank accounts in joint name with others, including Debra Hines and the disposition of church collections into one or more of the joint bank accounts.

Because appellant's eighth contention has merit, we amend judgment of sentence.

## FACTUAL AND PROCEDURAL HISTORY

During the evening of August 30, 1986, and early morning of August 31, 1986, the Triedstone Baptist Church was vandalized. Pews were broken loose and flipped over; an organ and piano were damaged and the word "E-V-I-L" was scratched into the wood surfaces of the respective musical instruments; a stained glass window depicting the Resurrection was damaged; the glass doors to the sanctuary were damaged; and, an amplifier and six microphones were missing from the sanctuary. In addition, the white powdery substance from a fire extinguisher was sprayed throughout the church. On one of the chairs in the sanctuary, the white powder left the outline of a hatchet. Downstairs in the church, leather chairs used for Sunday School were cut, the doors to the pastor's office and the trustees' office were "broke." Trial transcript at 29. A pay tele-

phone had been chopped, a water fountain had been damaged, and sinks in the ladies' and men's rooms were plugged with water left running.

On August 31, the damage was discovered by Solomon Liggett, a trustee of the Triedstone Baptist Church, and the police were notified. Upon arrival, Officer Todd inspected the damage while escorted by Mr. Liggett. Thereafter, Officer Boler arrived and observed conditions. While observing conditions, he noticed that the amplifier was missing and, at the same time, a hole was in the stained glass window. Believing that the sound system was thrown through the window, Officer Boler proceeded to the outside of the church and found a garbage can underneath the porch of the adjoining parsonage. Within the garbage can, the officer discovered a garbage bag containing photographs of appellant's family members, envelopes, bank slips and vouchers relating to checking accounts of appellant and a "Janice McBride," and two pairs of shoes, at least one pair of which was covered with a white powdery substance sprayed from a fire extinguisher. One of the bank statements pertaining to Janice McBride was pushed in the toe of a shoe. Officer Boler seized these items and placed them in police custody. At the time of the vandalism and search, appellant had been dismissed as pastor of the Triedstone Baptist Church; however, pursuant to the recommendation of a court appointed moderator,[1] appellant was permitted to remain in the parsonage until October 20, 1986.

On October 24, 1986, Sergeant Alston, Mr. Liggett, other church trustees and a locksmith visited the parsonage to prepare lodging for the next pastor. A locksmith was required to unlock the doors because the locks had been changed. Once inside the parsonage, Mr. Liggett identified a metal file cabinet as church property that was normally kept in the pastor's office. Sergeant Alston directed that the file cabinet be opened by the locksmith. Inside the cabinet was a hatchet which matched the outline on the

---

1. A moderator had been appointed as a result of a civil lawsuit between the church and the pastor.

chair in the church sanctuary. Officer Boler seized the hatchet and also a pair of size 11R boots found in the parsonage. On September 2, 1986, after receiving a call that someone was in the parsonage, Officer Boler went to the premises. At the parsonage, Officer Boler found appellant and asked him whether he had thrown away any of the items he had discovered in the garbage can on August 31. Appellant responded that he was in the process of moving and had thrown away some bank slips and shoes.

Appellant was subsequently charged by criminal information with one count of criminal mischief and two counts of institutional vandalism. Thereafter, trial counsel filed omnibus pre-trial motions, requesting, *inter alia*, that the trial court suppress evidence seized as the result of the searches conducted on August 31 and October 24. These motions were denied after hearing. On April 6, 1987, following a trial by jury, appellant was found guilty of all charges. After timely post-trial motions were filed and denied, appellant was sentenced to a concurrent term of eight to twenty-three and one-half months imprisonment on counts one and two. In addition, the court imposed a suspended sentence of four years' probation on count three. A motion for reconsideration and modification of sentence was filed and denied. Subsequently, new counsel filed a notice of appeal to this Court and, pursuant to an order of the trial court, filed a statement of matters complained of on appeal. On March 7, 1988, this Court dismissed the appeal without prejudice to appellant's rights under the PCHA for failure to file an appellate brief. On April 14, 1988, and August 8, 1988, appellant filed a PCHA petition.[2] After an evidentiary hearing, appellant's PCHA petition was dismissed and the relief requested denied, excepting that appellant was

2. Appellant initially filed a "Petition to Set Bond Pending the Filing and Consideration of a PCHA Petition" (hereinafter "Petition to Set Bond"). Subsequently, appellant filed an "Amended Petition under Post Conviction Hearing Act." Despite appellant's headings, only one PCHA petition was filed. In appellant's Petition to Set Bond, appellant merely expressed his intention of filing a PCHA petition upon receipt of appellant's entire file from prior counsels.

granted leave to appeal *nunc pro tunc* those issues raised at trial. This appeal followed.

Initially, we note that appellant's PCHA petition was filed after the effective date of the amendments to the PCHA which has been renamed the Post Conviction Relief Act (PCRA).[3] According to the PCRA, all amendments to the PCRA "shall apply to all actions for collateral relief, whether statutory or common law, instituted on or after the effective date of this act, irrespective of the date of conviction or sentence." Historical notes to 42 Pa.C.S. § 9541 *et seq.* We, therefore, proceed to review appellant's contentions pursuant to the PCRA.

Under the PCRA, petitioner is entitled to relief if the ineffectiveness of counsel "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Instantly, appellant alleges that "prior appellate counsel was ineffective in failing to prosecute the [direct] appeal." PCHA Petition at 6. The PCHA court granted appellant's request for relief, namely to appeal *nunc pro tunc.* We find no error and, accordingly, address appellant's arguments that are preserved for appellate review. *See* 42 Pa.C.S. § 9542 (PCRA "is [not] intended to provide a means for raising issues waived in prior proceedings.").

## APPEAL NUNC PRO TUNC

■ Appellant first maintains that the trial court erred in refusing to suppress evidence obtained from the warrantless search of a trash bag contained in a garbage can located underneath the porch of the parsonage. Appellant had no reasonable expectation of privacy in the items that he abandoned in the garbage can and, accordingly, the evidence was properly admitted.

... [T]he Fourth amendment protects people, not places. What a person knowingly exposes to the public, even in

---

**3.** Even if we treat appellant's Petition to Set Bond as a PCHA petition, it was filed after the effective date of the PCRA.

his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States,* 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (citations omitted). This privacy test is two-fold: "the expectation must not only be 'actual (subjective),' but also one that 'society is prepared to recognize as reasonable.' " *Commonwealth v. Cihylik,* 337 Pa. Super. 221, 227, 486 A.2d 987, 990 (1985) (citations omitted).

Property rights, actual usage, and historical distinctions are all used to determine whether the Fourth Amendment right to privacy applies. *Commonwealth v. Sell,* [288 Pa.Super. 371, 377–79, 432 A.2d 206, 210 (1981) ]. But ... "in considering the reasonableness of asserted privacy expectations, ... no single factor invariably will be determinative." *Rakas v. Illinois, supra,* 439 U.S. [128] at 152, 99 S.Ct. [421] at 435 [58 L.Ed.2d 387 (1978) ].

*Commonwealth v. Lowery,* 305 Pa.Super. 66, 71, 451 A.2d 245, 247 (1982).

It is also well established that "no one has a standing to complain of a search and seizure of property that he has voluntarily abandoned." *Commonwealth v. Shoatz,* 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976). "The determination of whether or not there has been an abandonment of property is an ultimate fact, dependent upon the purported act of abandonment and the manifested intent of the person alleged to have abandoned the property." *Commonwealth v. Sero,* 478 Pa. 440, 452, 387 A.2d 63, 69 (1978). "The test for abandonment is whether the complaining party could retain a reasonable expectation of privacy in the property allegedly abandoned." *Id.* In *Commonwealth v. Minton,* 288 Pa.Superior Ct. 381, 432 A.2d 212 (1981), this Court held that "placing trash for collection is an act of abandonment which terminates any fourth amendment protection." *Id.,* 288 Pa.Superior Ct. at 391, 432 A.2d at 217. In *Minton,* police removed a large plastic bag sitting at the curb side directly in front

of the defendant's residence and discovered marijuana residue in the bag. *See also United States v. Reicherter,* 647 F.2d 397, 399 (3d Cir.1981) ("Every circuit considering the issue has concluded that no reasonable expectation of privacy exists in a public area for collection"; such trash has been abandoned).

*Cihylik,* 337 Pa.Super. at 228, 486 A.2d at 991. Recently, the United States Supreme Court in *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), in accordance with *Minton* and the majority of state appellate courts that have considered the issue, ruled that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of a home.

In the instant case, the trial court refused to suppress the items seized from the garbage can relying in part on *Minton.* Appellant maintains that the trial court's reliance is misplaced because the garbage can was within the curtilage of the parsonage. We disagree with appellant's contention. As stated earlier, property rights are only one consideration in determining whether a legitimate expectation of privacy exists. Instantly, the record indicates that the parsonage is connected with the church by a covered walkway. Being next to a church, the public has easy access to the parsonage and the surrounding area. In addition we note that, in many instances, a parsonage is not used exclusively as a dwelling, but for other purposes, including meeting and counseling members of the church. As a result, the parsonage and its surroundings are subject to public access. Thus, like the garbage left for collection in *Minton* and *Greenwood,* the garbage in the instant case was subject to public inspection. Consequently, no objectively reasonable expectation of privacy existed. We, accordingly, find no error.

Appellant also argues that the trial court erred in using his statements to Officer Boler to support its argument that appellant had abandoned the items seized during the warrantless search of the garbage can. Specifically, appellant

claims that these statements are the fruit of an illegal search and consequently cannot be used by the trial court to support the legality of the search. In light of our disposition of the prior issue, we find it unnecessary to address this contention.

Appellant's third claim is that the trial court erred in refusing to suppress the items seized during a warrantless search of the parsonage on October 24, 1986. Appellant asserts that he had not yet vacated the parsonage when the search was conducted. The Commonwealth maintains that the evidence is to the contrary. Given the circumstances of the instant case, we do not find vacation of the parsonage determinative. Even if we assume that appellant had remained in the parsonage, we cannot conclude that appellant had a reasonable expectation of privacy in the parsonage. "In determining what is 'reasonable' all surrounding facts and circumstances must be considered." *Commonwealth v. Latshaw*, 481 Pa. 298, 306, 392 A.2d 1301, 1305 (1978), *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979).

Instantly, the record indicates that appellant was hired to serve as pastor of the Triedstone Church, starting in September of 1983. Terms of his employment included a salary of $250.00 per week, insurance coverage for appellant and his family, living accommodations at the parsonage, payment of utilities and attendance at three conferences per year. In July of 1986, appellant was removed as pastor, and given until October 20, 1986, to vacate the parsonage, a period of ninety days. In addition, appellant was to receive salary in the amount of $300.00 per month during his stay at the parsonage. Appellant, however, never received a salary during the ninety-day period.

Given these circumstances, appellant's expectation of privacy was not reasonable. At the time of the search, appellant did not have sufficient control over the premises to retain a right of privacy. Appellant knew that his employment had terminated and, consequently, the terms of his employment, including living accommodations, would be

484

discontinued. These living accommodations were, in fact, discontinued. In addition, it would be expected that the trustees, responsible for the church properties and finances, would eventually wish to enter the parsonage, after the term of the pastor's residency, to determine whether the parsonage needed repair or cleaning for the next pastor.[4] We further note that the trustees as legal tenders of the church exercised sufficient control and authority to consent to the search of church property, including the file cabinet found in the parsonage. *See Latshaw, supra.* We, therefore, conclude that the trial court properly admitted evidence as a result of the October 24 search.

Appellant next contends that the trial court erred in denying appellant's motion for a mistrial after Commonwealth witness, Solomon Liggett, referred to alleged prior criminal activity by appellant. Specifically, appellant complains of the following testimony:

There were papers from Birmingham, Alabama, records of things pertaining to Eddie J. Perdue working in Alabama at a recreational park and so forth. Some of them were—well, I noticed one paper was where he had filed a complaint for discrimination in the parks. And there was one paper that said they had had a hearing on his work record, and they were telling him that they had found on the time card where it had been tampered with.

N.T. 4/2/87 at 44.

"The 'controlling question' in cases raising this issue 'is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity.' *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). If such an inference is created then a mistrial must be granted. However, the Pennsylvania Supreme Court stated in *Commonwealth v. Nichols,* 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979) that

4. It is unclear from the record who changed the locks to the parsonage. Even assuming that appellant changed the locks, we find that his actions insufficient to establish an objective expectation of privacy given that he no longer retained control of church property as a result of his removal as pastor.

'[not] all references which may indicate prior criminal activity warrant reversal.' *Ibid.* As we stated in *Commonwealth v. Colon,* 264 Pa.Super. 314, 321–322, 399 A.2d 1068, 1071 (1979), there is 'no per se rule requiring a new trial for every reference [to prior criminal conduct]. The decision whether to declare a mistrial when faced with these situations is addressed to the sound discretion of the trial judge.' "

*Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 450–51, 444 A.2d 115, 118 (1982). Moreover, whether the remark was intentionally elicited by the Commonwealth and whether cautionary instructions were given are considerations relevant to the determination of whether a mistrial is required. *Commonwealth v. Coburn,* 336 Pa.Super. 203, 485 A.2d 502 (1984); *Commonwealth v. Whiteman,* 336 Pa.Super. 120, 485 A.2d 459 (1984). Our scrutiny of the record indicates that the trial court properly denied appellant's motion. First, we note that Mr. Liggett's testimony is not a clear reference to prior criminal activity.[5] In addition, the Commonwealth explicitly stated at trial that it did not intend to elicit the testimony at issue. Trial transcript at 45. Finally, we note that the trial court provided curative instructions. Trial Transcript at 46. In light of the foregoing, we find no abuse of discretion.

Appellant's fourth and fifth claims pertain to the cross-examination of Blocker. During direct examination, Blocker testified that, at 12:00 a.m. on August 31, 1986, he saw appellant opening the church door. Appellant maintains that the trial court erred in not allowing trial counsel to cross-examine Blocker in regard to: (1) his use of drugs and alcohol and (2) his current probation or parole status. The scope and limits of cross-examination are largely within the discretion of the trial court and the actions pertaining thereto will not be reversed in the absence of a clear abuse of discretion or error of law. *Commonwealth v. Schmidt,*

---

5. Appellant contends that appellant's tampering with his time card was a clear reference to prior criminal activity on part of appellant, in the nature of theft by deception and/or false reports. Finding the reference to be ambiguous, we disagree.

437 Pa. 563, 263 A.2d 382 (1970). "[Q]uestions pertaining to the use of drugs or alcohol are proper when asked 'for the purpose of attacking the credibility of the witness by showing that at the time of the event to which he testified his powers of observation and memory were impaired, so that his recollection and account of the experience might be inaccurate.'" *Commonwealth v. Duffy*, 238 Pa.Super. 161, 173, 353 A.2d 50, 57 (1975), *allocatur denied, quoting Commonwealth v. Dreibelbis*, 217 Pa.Super. 257, 261, 269 A.2d 387, 389 (1970). "[Q]uestions on their use at other times are impermissible." *Commonwealth v. Drew*, 500 Pa. 585, 591, 459 A.2d 318, 321 (1983), *quoting Commonwealth v. Yost*, 478 Pa. 327, 386 A.2d 956, 961 (1978). Instantly, the record indicates that trial counsel was permitted to cross-examine Blocker regarding his drug and alcohol use on the night in question. "The questions that were not permitted by the trial judge concerned times that were unrelated to the litigation and did not affect the testimonial ability of the witness." *Duffy*, 238 Pa.Super. at 174, 353 A.2d at 57. We, therefore, find no error.

Appellant's fifth contention has been waived. Appellant argues that the trial court erred in limiting the cross-examination because it prevented the defense from demonstrating that Blocker was biased in that he expected to receive favorable treatment by the Commonwealth. It is true that "... whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be known to the jury." *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626, 631 (1986). Instantly, trial counsel, however, did not present this theory to the trial court when the Commonwealth requested a pre-trial ruling with regard to the limits of cross-examination of Blocker. In addition, at trial, the defense failed to present its theory to the court when the Commonwealth objected to the defense's line of questioning. We, there-

fore, find the issue was not preserved for appellate review.[6] *See generally, Commonwealth v. Kaminski,* 349 Pa.Super. 78, 85–87, 502 A.2d 1281, 1285 (1985) (Claim waived where defendant did not object to court's limiting ruling and also indicated satisfaction with court's ruling.)

■ Appellant also contends that he was improperly sentenced because criminal mischief and institutional vandalism merge for purposes of sentencing. Recently, our Supreme Court in *Commonwealth v. Leon Williams,* 521 Pa. 556, 559 A.2d 25 (1988), modified the traditional merger analysis summarized in *Commonwealth v. Michael Williams,* 514 Pa. 124, 522 A.2d 1095 (1987). In *Michael Williams,* the Court stated:

> [M]erger is required only when two prerequisites are met. First, the crimes must 'necessarily involve' one another. Second, even if the two crimes necessarily involve one another, they do not merge if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest. To determine whether multiple offenses involve substantially different interests, or how many evils are present in a given criminal act, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the Crimes code.

*Id.,* 514 Pa. at 135, 522 A.2d at 1101. This analysis was modified in *Leon Williams* by the Court providing that "except for lesser included offenses, the doctrine of merger based on whether the Commonwealth has an interest in prosecuting a criminal defendant for more than one crime is hereby abrogated and abolished." *Id.,* 521 Pa. at 564, 559 A.2d at 29. Consequently, in reviewing merger claims, we

6. Appellant attempts to preserve this claim by alleging "prior trial counsel was ineffective in failing to raise the issues ..." PCHA petition at 6. He, however, fails to prove that trial counsel's ineffectiveness undermined the reliability of the jury verdict. Blocker's credibility was impeached by crimes involving dishonesty or false statement. In addition, trial counsel was able to cross-examine Blocker with regard to his use of alcohol on the night in question. Given these circumstances, we find that appellant is not entitled to relief pursuant to the PCRA.

are required to apply the following holding: "Where the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses." *Commonwealth v. Weakland,* 521 Pa. 353, 363, 555 A.2d 1228, 1233 (1989).[7]

Applying the foregoing holding to the case *sub judice,* we first must determine whether criminal mischief and institutional vandalism share the same elements. We conclude that they do not. Pursuant to 18 Pa.C.S. § 3304(a), a person is guilty of criminal mischief if he:

(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe);

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property; or

(3) intentionally or recklessly causes another to suffer pecuniary loss by deception or threat.

A person commits the offense of institutional vandalism if he knowingly desecrates as defined in section 5509 (relating to desecration of venerated objects), vandalizes, defaces or otherwise damages:

(1) any church, synagogue, or other facility or place used for religious worship or other religious purposes;

(2) any cemetery, mortuary or other facility used for the purpose of burial or memorializing the dead;

(3) any school, educational facility, community center, municipal building, courthouse facility or juvenile detention center;

(4) the grounds adjacent to and owned or occupied by any facility set forth in paragraph (1), (2) or (3); or

---

**7.** In *Weakland,* the Supreme Court did not apply this holding because the problem was not whether the same facts supported multiple convictions, but whether facts in evidence additional to those facts establishing one crime should have been used to satisfy the element of another crime. *Id.,* 521 Pa. at 353, 555 A.2d at 1228. We are not presented with that problem in the instant case.

(5) any personal property located in any facility set forth in this subsection.

18 Pa.C.S. § 3502(a). It is evident from the statutory definitions delineated *supra* that criminal mischief involves negligent and reckless conduct whereas institutional vandalism involves intentional conduct. Furthermore, criminal mischief, unlike institutional vandalism, entails endangerment of persons and does not entail desecration. *See* 18 Pa.C.S. § 5509(b) ("[T]he word 'desecrate' means defacing, damaging, polluting or otherwise physically mistreating in a way that the actor knows will outrage the sensibilities of persons likely to observe or discover the action.").

Although the elements of the crime differ, the facts which established the commission of institutional vandalism also served as the basis for conviction under 18 Pa.C.S. § 3304. The two crimes arose out of a single criminal episode whereby church property was damaged. Consequently, pursuant to *Leon Williams*, the crimes do not merge.

■ Appellant also contends that the imposition of sentence on count three for institutional vandalism exceeded the statutory maximum. The jury found that appellant was guilty of institutional vandalism for pecuniary loss in the amount of $1,000.00. At sentencing, the trial court imposed a suspended sentence of four years' probation. Pursuant to 18 Pa.C.S. § 3502(b), institutional vandalism "is a felony of the third degree if the act is one of desecration ... or if the actor causes pecuniary loss in excess of $5,000.00.... Otherwise, institutional vandalism is a misdemeanor of the second degree." "A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than ... two years in the case of a misdemeanor of the second degree." 18 Pa.C.S. § 1104(2). Moreover, a sentencing court may place a defendant on probation for a period of time not to exceed the maximum term of imprisonment authorized by law for the offense which was committed. 42 Pa.C.S. § 9721(a)(1). Instantly, the trial court

agreed with appellant's contention; however, it refused to modify the sentence because appellant did not request modification of sentence on this basis at an earlier date. We find the trial court erred in finding that appellant waived his contention. "A sentence that exceeds the statutory maximum is not subject to waiver." *Commonwealth v. Lane*, 236 Pa.Super. 462, 465 n. 5, 345 A.2d 233, 234 n. 5 (1975), *allocatur denied; Commonwealth v. Mitchell*, 319 Pa.Super. 170, 465 A.2d 1284 (1983), *corrected*, 483 A.2d 1389 (Pa.Super.1983) (Illegality of sentence cannot be waived; therefore, defendant's failure to raise issue previously does not preclude Superior Court's consideration of it.). We amend the sentence to provide for two years' probation.[8] *See Commonwealth v. Walker*, 286 Pa.Super. 239, 241–42, 428 A.2d 661, 662 (1981) (Superior Court has power to amend sentence provided sentence is not increased.).

## CLAIMS PERTAINING TO TRIAL COUNSEL'S INEFFECTIVENESS

■ Appellant's final arguments pertain to allegations of ineffective assistance of trial counsel. Specifically, appellant maintains that trial counsel was ineffective for failing to object to Commonwealth's cross-examination of appellant regarding: (1) his whereabouts after parting company of Reverend Bolden on August 31, 1986, after 12:45 a.m.; (2) the opening of bank accounts in joint names with others including Debra Hines; and (3) the disposition of church collections into one or more of the joint accounts. We do not find that counsel's failure to object in these circumstances undermined the reliability of the jury verdict. During direct examination, appellant testified that he was in Reverend Bolden's company from approximately 11:45 until 12:45 during the evening of August 31, 1986. This time period coincided with the eyewitness identification of appellant at the church. Given these circumstances, it was within the proper scope of cross-examination for the Com-

8. The Commonwealth concedes that appellant's sentence was beyond the statutory maximum.

monwealth to question appellant regarding his whereabouts during the night and early morning of the incident. Moreover, the questions were relevant and within the accepted limits of cross-examination for the Commonwealth was entitled to attack the credibility of appellant by demonstrating that appellant's memory was selective.

The Commonwealth's cross-examination was also proper with regard to any joint accounts that may haven been held by Debra Hines and appellant. As the PCHA court notes, Debra Hines was listed as an alibi witness for the defense. During cross-examination, appellant admitted that he was with Ms. Hines during a part of the early morning hours of August 31, 1986. Consequently, the prosecutor's subsequent questions in reference to any joint accounts were relevant and proper in that they attacked the credibility of appellant by exploring appellant's relationship with Ms. Hines.

Finally, any reference to the disposition of church funds as a result of the Commonwealth's cross-examination did not result in prejudice to the defendant. We disagree with appellant that the following testimony clearly refers to prior criminal conduct:

Q Now, something has been made of the fact that payments weren't made out of the standard church account after March of 1986. Is it correct you started collecting the money yourself and putting it into one of these accounts.

A No, sir.

Q That were opened?

A This is not correct.

Q You didn't put it into a new account, open a new account for the church?

A No, I did not.

Q You had another account, the pastor's account. What was that for?

A That was an auxiliary account just like there are thirteen other accounts in the church that have signatures to it to do whatever they are doing it for.

N.T. 4/2/87 at 234. *See Commonwealth v. Potts*, 314 Pa.Super. 256, 275–77, 460 A.2d 1127, 1137 (1983) (Characterization is prejudicial if the testimony conveys, either expressly or by reasonable implication, the fact of a prior criminal offense.). It, therefore, follows that trial counsel's failure to object to Commonwealth's questioning did not undermine the reliability of the jury verdict.

Accordingly, sentence on count three for institutional vandalism is modified to two years' probation; otherwise, judgment of sentence is affirmed.