**STATE of Delaware**

v.

**David RANKEN.**

**Criminal Action Nos. IN–10–02–0964 thru IN–10–02–0973, IN–10–02–1889, IN–10–02–1890, and IN–10–02–1902.**

Superior Court of Delaware,
New Castle County.

Submitted: July 9, 2010.
Decided: Oct. 19, 2010.

Barzilai K. Axelrod, Esquire, Department of Justice, Wilmington, Delaware, for State of Delaware.

Thomas A. Foley, Esquire, of Wilmington, Delaware, attorney for the defendant.

*OPINION*

HERLIHY, Judge

Defendant David Ranken has moved to suppress evidence seized pursuant to a search warrant for 1307 Colin Drive in suburban Wilmington. All indications are that he resided there. The warrant was executed January 15, 2010, by the New Castle County Police.

As part of the probable cause to obtain the search warrant, the police examined, without a warrant, the contents of a trash can from 1307 Colin Drive which had been left in a public place at curbside for pick up. Ranken's motion relates *only* to the content of the warrant itself, that is, the affidavit of probable cause, and raises no factual issues outside the warrant. He attacks the warrant on three grounds: (1) lack of probable cause; (2) an improper warrantless search of his trash can which formed a part of the affidavit of probable cause; and (3) lack of nexus between the items recovered in the trash and what might be found and/or what the police were searching for inside 1307 Colin Drive. Basically, by implication he argues if that warrantless search is illegal, there is insufficient information remaining in the affidavit to establish probable cause. Since all of Ranken's claims relate to the content of the search warrant, they are exclusively issues of law.

The United States Supreme Court has decided that persons have no reasonable expectation of privacy in their trash left at curbside for collection. Ranken, however, based on Delaware Supreme Court precedent that Article 1 § 6 of the Delaware Constitution can provide greater protection than the 4th Amendment, contends a warrantless search of trash left at curbside for pick-up violates the Delaware Constitution. This is an issue of first impression under Delaware constitutional jurisprudence.

Since Ranken's motion is premised on the affidavit of probable cause, it is appropriate to quote the affidavit in full:

1) Your affiant # 1, Officer First Class Travis McDermott # 2638, is a sworn police officer employed by the New Castle County Police Department and has been so employed since January 07, 2002. Your affiant # 1 is currently assigned to the Special Operations Unit as a member of the Mobile Enforcement Team (M.E.T.). Your affiant # 1 has received training from the New Castle County Police Academy in narcotic and non-narcotic investigations. Your affiant # 1 has authored and executed numerous search warrants in reference to felony drug investigations.

2) Your affiant can truly state that during the month of January 2010 he made contact with a past proven and reliable confidential informant (Hereinafter CI1) in reference to the sale of marijuana and prescription Xanax occurring at 1307 Colin Drive Wilmington, DE 19804 (New Castle County).

3) Your affiant can truly state CI1 advised that a subject he/she knew as Dean Ranken was involved in the sale of marijuana and prescription Xanax. CI1 further stated that this subject resides at 1307 Colin Drive Wilmington, DE 19804 (New Castle County) and utilized this residence to keep and sell the illegal drugs.

4) Your affiant can truly state that he conducted a check of the CJIS computer system for the last name Ranken. This check revealed that a David Dean Ranken WMN DOB 7/16/1982 SBI # 00420593 (hereinafter D1) had a Delaware driver's license (# 1263552) listing address of 1307 Colin Drive Wilmington, DE 19804.

5) Your affiant can truly state that he showed CI1 a rap sheet photograph of D1. CI1 positively identified D1 as the subject he/she knew to be selling marijuana and prescription Xanax out of 1307 Colin Drive.

6) Your affiant can truly state that on 01/14/10 at approx 0545 hours your affiant and S/Cpl Fitzgerald responded to 1307 Colin Drive Wilmington, DE 19804. Upon arrival your affiant observed a dark colored trash can on the public sidewalk in front of the aforementioned address. This trash can was placed in a position that was consistent with it being placed for pick up from a waste management company.

7) Your affiant can truly state that he then collected three white plastic trash bags that were tied shut with a red draw string. These bags were then transported to a separate location and searched. While searching one of the secured trash bags your affiant located several small pieces of a green leaf like substance consistent with marijuana. This substance field tested positive for marijuana using reagent test kit # 8. Also within the same bag your affiant collected 2 blue wax baggies stamped "Jaguar," a small plastic straw, an the corners of two plastic bags.

8) Your affiant can truly state that he knows through training and experience that blue wax baggies with an identifiable stamp are consistent with baggies used to contain heroin. Your affiant also knows through training and experience that short plastic straws are used to ingest (snort) heroin.

9) Your affiant can truly state that he knows through training and experi-

ence that the corners of plastic bags (sandwich bags, zip lock bags, plastic storage bags etc.) are used to package illegal drugs such as marijuana and are commonly referred to as tear off bags.

10) Your affiant can truly state that during the search of the aforementioned trash bags he located a MetLife account statement in the name of David D. Ranken which listed the address of 1307 Colin Drive Wilmington, DE 19804.

11) Your affiant can truly state that all of the evidence collected from the plastic trash bag was logged in at the NCCPD HQ.

12) Your affiant can truly state that he conducted a criminal history check on D1. This check revealed that on 11/07/2003 D1 was arrested for Possession with intent to deliver a Non–Narcotic controlled substance (marijuana), maintaining a dwelling for keeping controlled substance (marijuana), manufacture of a Non–Narcotic controlled substance (marijuana), possession of drug paraphernalia, and possession of a firearm during the commission of a felony. As a result of this arrest D1 entered into a plea agreement and subsequently pled guilty to the felony charge of Unlawful Delivery of Noncontrolled Substance 16:4752:A0A1:F:D.

13) Your affiant can truly state that he conducted a check of D1's out of state criminal history utilizing the NCIC computer system. This check showed that on 04/14/2009 D1 was arrested by the Pennsylvania State Police and charged with possession of marijuana, possession of a controlled substance, and possession of drug paraphernalia. As a result

of this arrest D1 entered into a plea agreement and plead guilty to the charge of possession of marijuana (PA State Code CS13A32) on 10/06/2009.

14) Your affiant(s) know that Marijuana is Non–Narcotic Schedule I Controlled Substance.

15) Your affiant(s) know that Xanax is a Non–Narcotic Schedule IV Controlled Substance.

16) Your affiant(s) have learned through training and experience that persons who sell illegal drugs usually maintain business records and/or transaction notation of their illegal drug sales.

17) Your affiant(s) have learned through training and experience that the drug selling business is primarily a cash business and person(s) who sell controlled substances must maintain on-hand large amounts of USC in order to maintain and finance their ongoing business of illegal drug distribution.

18) Your affiant(s) has learned through training and experience that person(s) usually possess guns, and/or weapons to protect their drugs from the police and their competition.

19) Your affiant(s) are aware through training and experience that persons involved in illegal drug sales utilize electronic communication devices such as beepers and cellular phones to facilitate their business.

20) Your affiant(s) have learned through training and experience that person(s) who sell controlled substances often possess drug paraphernalia such as but not limited to packaging materials and scale.

21) Your affiant(s) have learned through training and experience that subjects involved in the drug trade uti-

lize their vehicles for transporting and/or concealing illegal drugs.

22) Your affiant(s) pray that a daytime search warrant be signed for the body of David Dean Ranken WMN DOB 07/16/1982 SBI# 00420593 and the duplex style dwelling known as 1307 Colin Drive Wilmington, DE 19804 (New Castle County) so that evidence may be searched for and seized in reference to this investigation.

\* \* \* \* \* \*

Identify item(s) to be searched for and seized:

Marijuana any other controlled substances, scales, and packaging equipment/materials, any drug paraphernalia, United States Currency (USC, Money), business records and or documents indicative of drug transactions and or USC transactions, any electronic communication devices, any Guns, ammunition and/or weapons, photographs of USC and/or any physical evidence of illegal drug use of and or sales.[1]

### *Parties' Contentions*

Ranken argues that the search warrant was unsupported by probable cause, thereby making it invalid. He offers several reasons: first, that the warrant is devoid of any information that drug dealing was observed either by any informants or any neighbors; second, that the warrant does not reflect any surveillance of Ranken carrying the trash bags or the trash can; third, because garbage on the street is easily accessible to the public and passers-by, a one-time discovery of one bag containing marijuana residue does not

establish probable cause;[2] and, finally, that because the MetLife statement did not contain any date, it was impossible for the magistrate to know how long it or contraband had been sitting in that trash bag.[3]

Additionally, Ranken argues that the search warrant was overbroad in scope and that the list of items sought in the search warrant was unsupported by any facts outlined in the affidavit. Moreover, Ranken contends that "there wasn't substantial basis for the magistrate to have issued a search warrant for the 'place to be searched'—1307 Colin Drive, Wilmington Delaware 19804."[4] He further contends there is no nexus between the items sought and the place to be searched. Specifically, he asserts there is no connection between the "minuscule" items found in the trash and the types of things for which the police were authorized to search.

Alternatively, Ranken asserts that the affidavit of probable cause was based upon the items found in his trash bags found inside the trash can, without a warrant, and that, although the Delaware Supreme Court has never ruled on this issue, this Court should find that warrantless searches of citizens' trash is unreasonable under the Delaware Constitution.[5] Without explicitly saying so, Ranken's argument here is that if the warrantless search of the trash bag is illegal, there is insufficient evidence left in the affidavit to establish probable cause for the search.

Ranken also claims that no one observed him carrying the trash bags or trash can to the curb and that it is possible that they

---

Affidavit of Probable Cause dated 1/15/2010.

2. *Id.* ¶ 5 (citing *State v. Davila,* 169 S.W.3d 735, 740 (Tex.App.2005)).

3. Def.'s Mot. ¶ 5–6.

4. *Id.* at ¶ 8.

5. State's Resp. at 9, 14.

came from a passerby.[6] The State's response is that Ranken therefore has no standing to challenge the contents of someone else's trash.[7]

The State further replies that even if Ranken did have a subjective expectation of privacy, such expectation is not protected unless society is prepared to accept as objectively reasonable and therefore his argument must fail on the merits with regard to the United States Constitution.[8] Having "deposited the garbage 'in an area particularly suited for public inspection ... [Ranken] could have had no reasonable expectation of privacy in the inculpatory items that [he] discarded.'"[9] The State goes on to argue, that although the Delaware Supreme Court has never ruled on the issue, precedent strongly suggests the warrantless search of trash in a container left for pick-up passes muster under the Delaware Constitution.

Considering the totality of the circumstances, the State asserts that the issuing magistrate had a substantial basis for concluding that probable cause existed that drug crimes had been committed; and, that there was probable cause to believe that evidence of both drug use and packaging/distribution crimes would be found in Ranken's residence based on the items found in his trash and other matters cited in the affidavit.[10] In addition to the incriminating evidence found in Ranken's trash, the affidavit also contained statements made by a prior known and reliable confidential informant that Ranken was involved in the sale of marijuana and Xanax

and that he utilized his residence to keep and sell such drugs.[11]

Lastly, the State argues that the search warrant was not overbroad and that based on Officer McDermott's training and experience in drug cases, it was reasonable to believe that all the items listed in the affidavit could have reasonably been found in the execution of the warrant.[12]

### Discussion

### Search of the Trash Can

Because of the centrality of the propriety of the warrantless search of the trash bags to the sufficiency of the probable cause affidavit and Ranken's motion, the Court's analysis of Ranken's motion necessarily begins there. The United States Supreme Court in *California v. Greenwood*,[13] held that a warrantless search of trash does not violate the Fourth Amendment. Ranken acknowledges that. The United States Supreme Court said, however, that it was ruling only as an interpretation of the United States Constitution, but that the states were free to interpret their own constitutions on this issue.

Ranken's motion seeks a declaration that the warrantless search of the trash violated Art. I, § 6 of the Delaware Constitution. No Delaware court, let alone the Delaware Supreme Court, has ruled on this issue. The issue, therefore, is novel.

To get to an analysis of this issue under the Delaware Constitution, it is important to start with the decision of the United States Supreme Court in *Greenwood.*

---

6. Def.'s Mot. ¶¶ 5, 6.

7. State's Resp. at 9–10.

8. *Id.* at 11–12.

9. *Id.* at 11 (citing *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)).

10. State's Resp. at 17.

11. *Id.* at 17–18.

12. *Id.* at 19.

13. 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

In *California v. Greenwood,* the United States Supreme Court held that the Fourth Amendment to the U.S. Constitution does not prohibit the warrantless search and seizure by police of garbage left for collection in a location accessible to the public.[14] The analysis necessary for determining Fourth Amendment protections is "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize 'reasonable.' "[15] Thus, the search of the trash would only violate Ranken's rights under the Fourth Amendment of the United States Constitution if he manifests a subjective expectation of privacy that society recognizes his expectation as objectively reasonable.[16]

In *Greenwood,* the police officer instructed the trash collector to pick up the plastic garbage bags from the curb of the defendant's house; the trash was subsequently turned over to the officer.[17] As part of the affidavit of probable cause for a search warrant, the police relied, in part, upon items seized in their warrantless search of the trash.[18] While the Supreme Court concluded that defendants did have a subjective expectation of privacy, that expectation was not objectively reasonable under societal norms.[19] The Supreme Court found that since the they exposed their garbage to the public, their Fourth Amendment claim was defeated.[20]

It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third-party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police to do so.[21]

Therefore, under the Federal Constitution, there is no reasonable expectation of privacy with regard to trash outside the curtilage of the property.[22]

Since Ranken's trash was left in an area accessible to the public, the police were permitted, under the Fourth Amendment, to search and seize the three white trash bags located in a dark colored trash can on the public sidewalk in front of Ranken's address. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."[23] Under the United States Constitution, Ranken is bound by the decision set forth in *California v. Greenwood.*

While *Greenwood* stands for the proposition that the Federal Constitution does not establish a reasonable expectation of privacy in trash, the Supreme Court said "[i]ndividual States may surely construe their

14. *California v. Greenwood,* 486 U.S. 35, 37, 108 S.Ct. 1625, 1627, 100 L.Ed.2d 30 (1988).

15. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (Harlan, J., concurring).

16. *Greenwood,* 486 U.S. at 39, 108 S.Ct. at 1628, 100 L.Ed.2d at 36.

17. *Id.*

18. *Id.*

19. *Id.* at 40, 108 S.Ct. 1625.

20. *Id.*

21. *Id.* at 40–41, 108 S.Ct. at 1628–29, 100 L.Ed.2d at 36–37.

22. *See, United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).

23. *Katz,* 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582.

own constitutions as imposing more stringent constraints on police conduct that does the Federal Constitution."[24] "[T]he United States Constitution establishes a minimum, the least protection that a State may provide to its citizens without betraying our heritage of democratic, yet limited government. It does not establish a maximum; indeed, it could not without destroying the basic tenets of federalism."[25] Ranken urges this Court to interpret Article I, § 6 of the Delaware Constitution to hold that there is a reasonable expectation of privacy when the police search trash without a warrant.

Article I, § 6 of the Delaware Constitution provides:

> That people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation.[26]

The searches and seizures provision in the Delaware Constitution preceded the adoption of the Fourth Amendment and has been held to provide greater protection than those afforded by the United States Constitution.[27] In the preservation of evidence used against a defendant, the right of confrontation, the right to counsel, the right to trial by jury, and the stricter standard needed for nighttime search warrants, the Delaware Constitution provides greater rights than that of the United States Constitution.[28]

In *Jones v. State*, the State of Delaware Supreme Court held that the ruling in *California v. Hodari D.* interpreting the Federal Constitution is not consistent with the meaning of "seizure" under Article I, § 6 of the Delaware Constitution. In *Hodari D.*, the Supreme Court held that seizure did not take place until the defendant was tackled.[29] *Jones* distinguishes *Hodari D.* and holds that a seizure occurred when the defendant walked away after the officer instructed him to stop and remove his hands from his pockets.[30]

Thus, the Delaware Supreme Court chose not to adopt the less restricted definition of a seizure as adopted in *Hodari D.* and adopted a stricter definition of reasonable articulable suspicion justifying a seizure.[31] "*Hodari D.* is not consistent with our view of when a person is 'seized' within the meaning of Article I, § 6 of the Delaware Constitution in that *Hodari D.* would allow a police officer lacking reasonable suspicion to create that suspicion through an unjustified attempted detention."[32] Instead, Delaware has a higher standard of commitment in protecting the privacy of its citizens than that of the Federal Constitution.[33]

The Supreme Court in *Jones* followed the Pennsylvania Constitution because it

---

**24.** *Greenwood*, 486 U.S. at 44, 108 S.Ct. at 1631, 100 L.Ed.2d at 39.

**25.** *Sanders v. State*, 585 A.2d 117, 145 (Del. 1990).

**26.** Del. Const. Art. I, § 6.

**27.** *Jones v. State*, 745 A.2d 856, 863, 865 (Del.1999).

**28.** *Id.*

**29.** *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

**30.** *Jones*, 745 A.2d at 863.

**31.** *Id.*

**32.** *Id.* at 863–64.

**33.** *Id.* at 866.

reflects the same commitment in protecting the privacy of its citizens.[34]

> ... [T]he search and seizure provision in the Delaware Constitution preceded the adoption of the Fourth Amendment and was originally like a similar provision in the Pennsylvania Constitution. When the Delaware Constitution was amended in 1792 after the Fourth Amendment had already been adopted, Delaware continued to follow the search and seizure language from the Pennsylvania Constitution rather than the language in the Fourth Amendment.[35]

As another example of the broader protection of Delaware citizens' rights is *State v. Dorsey*. In that case, the police obtained a search warrant for a defendant, who rented a room to the deceased prior to his murder. He had been shot. After conducting the search of the building, they applied for and received a search warrant to search two automobiles which were owned and registered to the defendant.[36] The police were searching for and the warrant authorized a search for a hand gun of unknown caliber and any clothing or items which might have blood on them.[37] The defendant moved to suppress items seized from the vehicles during the search.[38] This Court denied the defendant's motion to suppress holding that, the police did not specifically say that the defendant was a suspect in the murder, and the affidavit did not specifically state facts to show the gun used in the shooting and bloody clothing would be in Dorsey's cars. Nevertheless, this Court held that probable cause could be inferred from the nature of the crime.[39] The defendant appealed to the Supreme Court.[40] The Supreme Court reversed, holding that the affidavit supporting the search warrant for Dorsey's two cars lacked sufficient probable cause.[41]

The primary issue then became whether, since the police had obtained a search warrant and acted under its authority, Delaware would adopt the "good faith" exception recognized by the United States Supreme Court in *United States v. Leon*,[42] for the United States Constitution.

The Delaware Supreme Court declined to adopt the *Leon* good faith exception to probable cause as found in the United States Constitution.[43] "The United States Constitution establishes a system of dual sovereignty: a federal government and state governments."[44] The Declaration of Rights in the Delaware Constitution differs from the federal Bill of Rights.[45] An examination of the laws and heritage of Delaware leads to the conclusion that Delaware citizens are afforded more rights than the Federal Constitution provides.[46] The Supreme Court gave an account of the differences historically between the search

34. *Id.* at 866.

35. *Id.* at 865.

36. *State v. Dorsey*, I.D. No. 9609013822, 1997 WL 528273 (Del.Super.Aug. 1, 1997) (Op. And Order).

37. *Id.* at *1.

38. *Id.*

39. *Id.* at *4.

40. *Dorsey v. State*, 761 A.2d 807 (Del.2000).

41. *Dorsey*, 761 at 813–814.

42. 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

43. *Dorsey*, 761 A.2d at 820.

44. *Jones*, 745 A.2d at 866.

45. *Dorsey*, 761 A.2d at 814.

46. *Id.*

and seizure provisions in the Delaware and United States constitutions:

[t]he original Delaware Constitution and Declaration of Rights were adopted in September 1776—approximately two months after the Declaration of Independence and fifteen years before the federal Bill of Rights. The primary and repeated concern expressed in the Declaration of Independence was that the king had either denied or violated the American rights as English Citizens. Consequently, virtually all of the first state constitutions contained explicit provisions dealing with the retention and limited reception of English common law and included Declaration of Rights, often based upon common law antecedents.[47]

In addition, "Delaware's independent interest in protecting its citizen against unreasonable searches and seizures did not diminish after the adoption of the Fourth Amendment to the federal Constitution."[48] The *Dorsey* Court held that given Delaware's long history of protecting its citizens, the Delaware Constitution requires actual probable cause and not a good faith basis for probable cause to secure a valid warrant in Delaware.[49] Since the evidence seized from the defendant's vehicles was pursuant to a search warrant with insufficient probable cause, the proper remedy was suppression of the evidence seized in violation of Article I, § 6 of the Delaware Constitution.[50]

The Pennsylvania Supreme Court had taken the same position, in an opinion prior to *Dorsey*, that there is no good faith exception to the exclusionary rule applicable to violations of Article I, § 8 of the Pennsylvania Constitution.[51]

While Delaware has a history of expanding and jealously guarding the rights of its citizens in different areas of constitutional law, expanding the rights of our citizens in this discrete situation, nevertheless, is not warranted based on precedent and policy.

An examination of the limited precedent involving warrantless searches of trash in Delaware supports that conclusion. In *State v. Grossberg*,[52] the defendant moved to suppress evidence seized pursuant to a search warrant. One ground was that a portion of the probable cause for the warrant was based on a warrantless search of a University of Delaware dormitory dumpster. In concluding there was no constitutional violation, this Court relied upon *Greenwood* and said:

Furthermore, the Supreme Court has held that a person has no reasonable expectation of privacy in trash that was readily accessible to the public, evincing its abandonment. "[T]he intent to relinquish ownership and abandon trash is tantamount to 'throwing away' a subjective expectation of privacy in it that society accepts as objectively reasonable." Thus, Grossberg abandoned any expectation of privacy when the discarded items became readily accessible to the public.[53]

**47.** *Id.* at 815–816.

**48.** *Mason v. State,* 534 A.2d 242, 248 (Del. Supr.1987).

**49.** *Dorsey,* 761 A.2d at 820.

**50.** *Dorsey,* 761 A.2d at 821.

**51.** *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). Although the Supreme Court in *Dorsey* again referenced the relationship of the Delaware and Pennsylvania constitutional provisions on search and seizure, it did not cite *Edmunds.*

**52.** 1998 WL 283491 (Del.Super. March 18, 1998).

**53.** *Id.* at 4. (Footnotes omitted).

There are several distinguishing aspects to *Grossberg.* First, this Court was apparently not presented with the issue of whether the warrantless dumpster search violated the Delaware Constitution. Second, the trash containers—the dormitory dumpster—was one used by others for their trash. Nevertheless, the policy of abandonment and no expectation of privacy in putting trash out in a public place was correctly endorsed and has been part of our jurisprudence for twelve years.

As our Supreme Court has said: "Moreover, these provisions in the Constitutions of Delaware and Connecticut, as well as Pennsylvania, New Jersey and other states tracing their roots the thirteen original colonies, share venerable origins that precede the adoption of the Fourth Amendment to the United States Constitution." [54] Delaware courts will, therefore, look to the constitutional provisions in the other "original colonies" to examine how the courts in these new states have interpreted their own provisions. This Court's further analysis, therefore, shifts to decisions in those original thirteen states involving the issues presented here.

As noted, in *Jones v. State,* [55] the Supreme Court looked to Pennsylvania because of the similarity of the constitutional provisions regarding search and seizure and the historical context of both. This Court, following that lead, will start its examination of "original colony" provisions and decisions with Pennsylvania.

Article I, § 8 of the Pennsylvania Constitution provides:

[S]hall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant. [56]

There are no Pennsylvania decisions, however, finding that a warrantless search of trash left at curbside does or does not violate Article I, § 8 of the Commonwealth Constitution. The most recent Pennsylvania court decision on the issue is *Commonwealth v. Bagley.* [57] There are several noteworthy components to *Bagley* relevant to this case although the propriety of the warrantless search of the trash was not decided under the Pennsylvania Constitution. First, even though there was a search warrant, following Pennsylvania precedent, the *Bagley* Court said there was no good faith exception under the Pennsylvania Constitution. [58] Second, the court referred to the rigorous strictures of § 8. [59]

Finally, of course, that court in following the reasoning of *Greenwood,* said the defendant had abandoned any reasonable expectation of privacy of trash put outside his house. [60] This Court does not know, of course, if § 8 of the Pennsylvania Constitution was argued. Even if not, the *Bagley* Court's references to that provision elsewhere in its opinion strongly suggests it saw no violation of that provision. *Bagley's* position was consistent with earlier Pennsylvania decisions finding no violation

---

**54.** *Jones,* 745 A.2d at 867. (Citations omitted).

**55.** 745 A.2d at 865.

**56.** Pa. Const. Art. I, § 8.

**57.** 408 Pa.Super. 188, 596 A.2d 811 (1991).

**58.** *Id.* at 816.

**59.** *Id.* at 815.

**60.** *Id.* at 819.

under the Fourth Amendment.[61] Finally, *Bagley* has remained the law in Pennsylvania for nineteen years.

Two courts of the original thirteen states/colonies have held their state constitutional provisions do not prohibit warrantless search of trash. The first opinion is *Commonwealth v. Pratt.*[62] The issue was whether a warrantless search of the defendant's trash left at curbside in front of his house violated Article 14 of the Massachusetts Declaration of Rights. That provision reads as follows:

Every subject has a right to be secure from all unreasonable searches, and seizures, of his person, his house, his papers, and all his possessions. All warrants, therefore, are contrary to this right, if the cause or foundation of them be not previously supported by oath or affirmation; and if the order in the warrant to a civil officer, to make search in suspected places, or to arrest one or more suspected persons, or to seize their property, be not accompanied with a special designation of the persons or objects of search, arrest, or seizure: and no warrant ought to be issued but in cases, and with the formalities prescribed by the laws.

The authorship of this provision is attributed to John Adams.[63]

The Supreme Judicial Court said that to determine whether there was a "search" under this provision must be determined by whether the defendant had a subjective expectation of privacy which can be recognized as " 'reasonable.' " [64] The Court went on to say:

In the circumstances of this case, the defendant cannot be said to have had a reasonable expectation of privacy in the contents of his trash bag. The bag was placed three feet from the street near the driveway in front of Pratt's residence. It sat exposed to the public, waiting to be gathered by the trash collector the following morning. This is not a case where police officers went to the defendant's back porch to seize garbage which had not yet been placed at curbside for collection. Rather, in this case the defendant can be said to have abandoned his privacy interests in his garbage through the placement of his trash bags at the curb for collection.[65]

The court concluded that under the facts of the case, there was no need to provide a broader protection under the Massachusetts Constitution with regard to privacy than found in the Fourth Amendment.[66]

In *Jones*, besides the Pennsylvania's Constitution, one of the other original thirteen colonies/states to which the Supreme Court made reference was Connecticut's Constitution.[67] In holding *Hodari D.* would not apply under the Delaware Con-

61. *Commonwealth v. Perdue*, 387 Pa.Super. 473, 564 A.2d 489 (1989) (no reasonable expectation of privacy exists in a garbage can located under the porch of a parsonage); *Commonwealth v. Cihylik*, 337 Pa.Super. 221, 486 A.2d 987 (1985) (no legitimate expectation of privacy in contents of garbage pit located beside a barn on leased lot); *Commonwealth v. Minton*, 288 Pa.Super. 381, 432 A.2d 212 (1981) (no reasonable expectation of privacy in large plastic trash bag sitting at the curbside).

62. 407 Mass. 647, 555 N.E.2d 559 (1990).

63. John W. Weber, III, *Parker v. Boyer, Disrupting the Balance Between Fourth Amendment Protections and the Limits of Law Enforcement Powers During a Search*, 25 S.U.L.Rev. 57, fn. 19 (1999).

64. *Commonwealth v. Pratt*, 555 N.E.2d at 567.

65. *Id.* (Citations omitted).

66. *Id.*

67. *Supra* p. 14.

stitution's meaning of seizure, the Delaware Supreme Court cited with approval a Connecticut case reaching the same result under that state's constitution.[68] Therefore, looking to Connecticut is instructive and persuasive. Like the Delaware Supreme Court, the Supreme Court of Connecticut acknowledged, in *State v. DeFusco,* a case dealing with a warrantless search of trash, that the State has the power to grant its citizens greater protections that those contained in the United States Constitution saying: [69]

> In this case, we must decide whether article first, § 7, of the Connecticut constitution affords greater protection than does federal law against warrantless searches of garbage placed at the curb for collection. For present purposes, we assume that our determination of whether garbage placed at the curb for collection falls within the protection of article first, § 7, is governed by the two-part standard that is used under the federal constitution and many other states' constitutions: (1) has the owner or custodian of the garbage manifested a subjective expectation of privacy with respect to it?; and (2) is that expectation one that society would consider reasonable? *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)(Harlan, J., concurring); see, e.g., *California v. Greenwood, supra,* 486 U.S. at 39, 108 S.Ct. at 1628.

That provision in the Connecticut Constitution states:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.

It is remarkably similar to our § 6. The Connecticut Supreme Court noted this about its provision, "Second, our respect for the sanctity of the home is not a factor in the circumstances of this case because article first, § 7 covers not only a person's home but also his 'papers' and possessions.' " [70]

The Connecticut Supreme Court in finding no state constitutional violation said:

> When the defendant placed his garbage at the curb in front of his house for collection by the garbage collector, a myriad of intruders, purposeful or errant, could legally have sorted through his garbage.[71]

* * * * * *

In light of our recognition of these potential intrusions on garbage placed at the curb for collection, the defendants argument for state constitutional protection against police searches of his garbage devolves into an argument that a person may harbor different expectations of privacy, all of which are reasonable, as to different classes of intruders. We cannot countenance such a rule. A person's reasonable expectations as to a particular object cannot be compartmentalized so as to restrain the police from acting as others in society are permitted or suffered to act. We have impliedly rejected such illogical linedrawing, and

---

**68.** *Jones,* 745 A.2d at 867, citing *State v. Oquendo,* 223 Conn. 635, 613 A.2d 1300 (1992).

**69.** *DeFusco,* 620 A.2d at 749.

**70.** *Id.* at 750. Note that the words, "papers and possessions" also appear in § 6 of the Delaware Constitution.

**71.** *Id.* at 751. (Citations omitted).

our Appellate Court has expressly done so.[72]

Three other highest courts in the "original thirteen" have ruled on the constitutionality of warrantless searches of trash. Each found no constitutional violation but the holdings were premised on *Greenwood* not any provisions in their own state constitutions. One such case is *State v. Hauser*,[73] where the police directed the trash collector to pick up the trash bag from the back of the defendant's house and keep it separate for a later search. That act, the North Carolina Supreme Court held, did not violate the defendant's reasonable expectation of privacy.[74]

The Court of Appeals of Georgia in *Perkins v. State*,[75] found no Fourth Amendment violation in a warrantless search of trash left at the curbside. In *State v. Sampson*,[76] the Maryland court, relying upon *Katz*, as the Connecticut Supreme Court had, found that there was a relinquishment of the expectation of privacy when trash was left for collection and readily accessible to the public.[77]

Two courts in the "original thirteen," New Hampshire and New Jersey, have held their state constitutions meant that the defendants retained a reasonable expectation of privacy in their trash. In *State v. Goss*,[78] the police had picked up searched through trash bags in the defendant's driveway where it would normally be for pick up. Relying upon a New Jersey case—discussed below—the New Hampshire Supreme Court held that because people put so much private material in their trash, they wish to maintain its confidentiality.[79] The court found the warrantless search of the defendant's trash violated the New Hampshire Constitution finding the expectation of privacy was reasonable.[80]

The New Jersey case is *State v. Hempele*.[81] The New Jersey Supreme Court said the only test under its state constitution was whether the expectation of privacy is reasonable.[82] It found such expectation meant the police had to obtain a search warrant involving the same standards for showing probable cause as with any other warrant.[83] In part, the court reached the result because people reasonably expected their trash to be picked up by a trash collector, taken to a trash site, and co-mingled with other trash.[84] It also equated leaving trash at curbside to leaving a letter in a curbside mailbox for the United States Postal Service to pick up.[85]

"Like a trash bag, that letter is 'readily accessible' to snoops and others. Nevertheless, an expectation of privacy in that letter is reasonable."[86] According to the New Jersey Supreme Court, since Article I, paragraph 7 of the New Jersey Constitution would not allow the state to open

72. *Id.* at 752. (Citations omitted).

73. 342 N.C. 382, 464 S.E.2d 443 (1995).

74. *Id.* at 447.

75. 197 Ga.App. 577, 398 S.E.2d 702 (1990).

76. 362 Md. 438, 765 A.2d 629 (2001).

77. *Id.* at 635–636.

78. 150 N.H. 46, 834 A.2d 316 (2003).

79. *Id.* at 319.

80. *Id.*

81. 120 N.J. 182, 576 A.2d 793 (1990).

82. *Id.* at 802.

83. *Id.* at 813.

84. *Id.* at 807.

85. *Id.* at 805.

86. *Id.* at 805.

letters left in mailboxes, the same reasoning would apply when analyzing a reasonable expectation of privacy in trash.[87] This Court declines to equate the protected contents of a federally protected mailbox to the contents of a garbage bag or can on the curb.

Placing a letter in a mailbox for postal delivery and placing trash at the curbside for pick up are, *most* respectfully, *not* analogous. There are numerous mailbox regulations which protect the privacy of the mail owner;[88] there are no such equivalent regulations regarding curbside garbage waiting for pick up by a trash collector. In addition, pursuant to 18 U.S.C. § 1702, it is a federal offense to enter a mailbox before a letter, postal card or package has been delivered for the purpose of tampering with the mail.[89] The penalty for doing so is a fine and/or imprisonment for not more than five years.[90] Mailboxes have far more restrictions or protections attached than a trash can or trash bag and are technically federal property. Therefore, this Court respectfully parts from the New Jersey Supreme Court's view comparing mail in a mailbox to leaving garbage on the curb for pick up.

Further, if someone steals a letter from the mailbox, a theft charge is likely. There is no equivalent if someone steals items from a trash container left at curbside for its contents to be picked up.

Also, the *Hempele* case was decided in 1990. That is long before it became known that people were taking items from trash in significant numbers to be used to commit crimes, particularly identity theft and fraudulent use of credit cards, now so rampant in our society. The media is replete with warnings to people not to put personal items in their trash such as bills, receipts, mailers from credit card companies, etc., which can be converted to forged credit cards, etc. Some of the media coverage and much advertising is not only to warn people not to do so but to instead shred such documents. This regrettable phenomenon over the last few years clearly emphasizes that reasonable people must or should have a lessened expectation of privacy in their trash. To put it differently, the expectation of privacy is no longer reasonable in this situation. In all due respect, that is why the *Hempele* decision is less persuasive, it at all.

### Other States' Views

The Court to this point has focused on the opinions in jurisdictions forming the original thirteen states. That analysis was appropriate because, like Delaware, these states take appropriate pride in their constitutional provisions which pre-dated the United States Constitution and the federal Bill of Rights. There are strong historical reasons to do as some of the opinions cited demonstrated.

But the analysis cannot stop with just these States. Many state courts have dealt with this issue. Twenty-two states have found no constitutional violation.[91]

---

87. *Id.*

88. *See* 39 C.F.R § 267.2; 39 C.F.R. § 266.1.

89. 18 U.S.C. § 1702.

90. *Id.*

91. *Walls v. State*, 536 So.2d 137 (Ala.Crim. App.1988); *State v. Beltz*, 160 P.3d 154 (Alaska Ct.App.2007); *State v. Fassler*, 108 Ariz. 586, 503 P.2d 807 (1972); *Rikard v. State*, 354 Ark. 345, 123 S.W.3d 114 (2003); *People v. Hillman*, 834 P.2d 1271 (Colo.1992); *State v. Stevenson*, 707 So.2d 902 (Fla.App. 2d Dist. 1998); *State v. Donato*, 135 Idaho 469, 20 P.3d 5 (2001); *People v. Collins*, 106 Ill.2d 237, 87 Ill.Dec. 910, 478 N.E.2d 267 (1985); *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005); *State v. Henderson*, 435 N.W.2d 394 (Iowa Ct.App.1988); *State v. Alexander*, 26 Kan. App.2d 192, 981 P.2d 761 (1999); *State v. Kyles*, 513 So.2d 265 (La.1987); *People v.*

Four states ruling on this issue have ruled a constitutional violation occurred.[92] This overwhelming majority is persuasive. One could argue that since over half of all of the states find no reasonable expectation or privacy in trash left at curbside, there is a broad recognition that there is no reasonable expectation of privacy (in all due respect to the few states which find it exists).

 This Court holds that under Article I § 6 of the Delaware Constitution, whether the two-part *Katz* test used in *Greenwood* is employed,[93] or just the single test of that the expectation of privacy be reasonable used in *Hempele*, the police warrantless search of trash here was constitutionally permissible. It strikes this Court as unreasonable to say people have a reasonable expectation of privacy in their trash until it is destroyed in fire or naturally deteriorates.

This Court is *not* deciding at this moment an issue which some other courts have addressed. There appears to be an issue in some cases of a warrantless search being allowed only "outside" the curtilage or at some distance from the residence or particular locations "inside" the curtilage.[94] This Court's holding *only* addresses the search of a trash container left at curbside on a public sidewalk. This limited holding means, however, that other cases will have to address the myriad issues regarding the location and/or condition of the trash containers in light of the Delaware Constitution.

Consequently, those paragraphs in the affidavit of probable cause reciting what was found in Ranken's trash will be considered in determining the answers to the next two issues: (1) was there probable cause to search his apartment and (2) was there a nexus between the items in the trash and being able to search his apartment and for the items sought.

### Sufficiency of Probable Cause

 In analyzing whether there is sufficient probable cause, the Court employs several tests. First, a search warrant, of course, may only be issued upon a showing of probable cause.[95] The affidavit supporting the search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed, and the property to be seized will be found in a particular place.[96] In determining whether probable cause was set out, the Court will apply the totality of circumstances test.[97] The facts alleged must enable the issuing judicial officer to make an independent evaluation

---

*Thivierge,* 174 Mich.App. 258, 435 N.W.2d 446 (1988); *State v. Oquist,* 327 N.W.2d 587 (Minn.1982); *State v. Texel,* 230 Neb. 810, 433 N.W.2d 541 (1989); *State v. Rydberg,* 519 N.W.2d 306 (N.D.1994); *State v. Brown,* 20 Ohio App.3d 36, 484 N.E.2d 215 (1984); *Cooks v. State,* 699 P.2d 653 (1985); *State v. Stevens,* 734 N.W.2d 344 (S.D.2007) *Nilson v. State,* 106 S.W.3d 869 (Tex.App.Dallas 2003); *State v. Jackson,* 937 P.2d 545 (Utah Ct.App. 1997); *Barekman v. State,* 200 P.3d 802 (Wyo. 2009). See 62 ALR 5th.

**92.** *See State v. Tanaka,* 67 Haw. 658, 701 P.2d 1274 (1985); *State v. Granville,* 140 N.M. 345, 142 P.3d 933 (2006); *State v. Morris,* 165 Vt.

111, 680 A.2d 90 (1996); *State v. Boland,* 115 Wash.2d 571, 800 P.2d 1112 (1990).

**93.** *Supra,* p. 852.

**94.** See cases discussed in *State v. Hauser, supra* p. 859 and *State v. Sampson,* 765 A.2d at 631, fn. 2.

**95.** *Fink v. State,* 817 A.2d 781, 786 (Del.2003).

**96.** *Sisson v. State,* 903 A.2d 288 (Del.2006).

**97.** *Gardner v. State,* 567 A.2d 404, 409 (Del. 1989).

of the matter.[98] In addition, a neutral and detached magistrate may draw reasonable inferences from the factual allegations in the affidavit.[99]

With this analytical framework in mind, the Court must determine if the affidavit set out probable cause to search for the items sought. In sum, it did:

1. A "past, proven reliable confidential informant" said Ranken was selling marijuana and prescription Xanax from his apartment at 1307 Colin Drive. The informant knew Ranken used his apartment to also keep the drugs he sold.

2. The informant identified Ranken's picture as the person of whom he or she was speaking.

3. DMV records showed 1307 Colin Drive was his residence.

4. Ranken has a 2003 Pennsylvania conviction for unlawful delivery of a non-controlled substance arising out of a series of charges including possession of a firearm during the commission of a felony. He has a 2009 Pennsylvania conviction for possession of marijuana.

5. The warrantless search of his trash found:

 a. Several small pieces of marijuana;

 b. Two blue wax baggies stamped "Jaguar" and other paraphernalia. The officer signing the warrant is experienced in drug investigations and in getting search warrants in drug cases. He connected what the found in the trash to illegal drug use and sales;

 c. Mail addressed to Ranken.

6. The affiant officer recites in general terms that his training experience in drug cases:

 a. Drug sellers usually posses guns;

 b. Drug sellers usually deal in cash and must have cash on hand;

 c. Drug sellers have to have and keep paraphernalia with which to package their product;

 d. Drug sellers use beepers and cell phones; and

 e. Drug sellers usually have sales records on hand.

When viewed utilizing the analytical framework set out above, this Court is satisfied that the totality of the circumstances set out in the affidavit established that probable cause existed for the search of 1307 and a nexus for the items being sought. First, the informant was a "past proven and reliable informant" according to the affiant officer. Second, the information was specific as to activity, person, and place. The Court recognizes that unlike some other search warrants the officer does not recite how the informant got that information. But within the four corners of the warrant, there is sufficient independent corroboration. Most of it comes from the items seized in the trash, the packaging, how the officer describes it, and, of course, the marijuana itself, which the informant said Ranken was selling in his apartment. Ranken's record as a drug dealer and possessor lend some corroboration.

▮▮▮▮▮ In determining whether there is sufficient probable cause from an informant's tip to support an affidavit for a search warrant, the courts apply a totality of the circumstances test. The test in-

98. *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984).

99. *Smith v. State*, 887 A.2d 470, 473 (Del. 2005) quoting from *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 546–47, (1983).

volves "case by case review of the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [100] The magistrate issuing the warrant must review the reliability of the informant, the details contained in the tip, and the degree to which the tip is corroborated by independent police surveillance and information.[101] However, even if an informant is anonymous or the informant's reliability is unknown, probable cause requirements are met if there is sufficient independent police corroboration.[102] In this case, the Court finds the past proven reliable informant's tip to be sufficiently corroborated to provide probable cause.[103]

Related to his nexus argument, Ranken challenges the conclusory nature of paragraphs 16–21 of the affidavit.[104] His challenge overlooks other paragraphs of the affidavit. First, the information that Ranken was keeping illegal drugs in his apartment and selling them from his

apartment. Second, to sell them means there has to be packaging. Third, drug buyers historically do not use checks or credit cards to pay for their drugs. Fourth, the person from whom Ranken bought the drugs would expect to be paid in cash. Fifth, in today's cell phone and pager society, the presence of such devices is anything but uncommon. Sixth, the relationship of guns to drug selling is regrettably a fact of current life.

On that last point, even if that statement is overbroad, and excludable as too general, its excision does not affect the balance of the affidavit establishing probable cause.[105]

 The Court must look to the entirety of the affidavit and not just so-called conclusory statements from the police.[106] Courts tend to invalidate affidavits in situations where police officers merely analyze the tip through the "lense" of their

---

**100.** *McAllister v. State*, 807 A.2d 1119, 1124 (Del.2002).

**101.** *LeGrande v. State*, 947 A.2d 1103, 1108 (2008).

**102.** *Id.; Tatman v. State*, 494 A.2d 1249, 1251 (Del.1985).

**103.** See *State v. Saunders*, 2000 WL 703021; *State v. Sisson*, 883 A.2d 868 (Del.Super.2005); *State v. DeFusco*, 224 Conn. 627, 620 A.2d 746, 756 (1993).

**104.** 16) Your affiant(s) have learned through training and experience that persons who sell illegal drugs usually maintain business records and/or transaction notation of their illegal drug sales.
17) Your affiant(s) have learned through training and experience that the drug selling business is primarily a cash business and person(s) who sell controlled substances must maintain on-hand large amounts of USC in order to maintain and finance their ongoing business of illegal drug distribution.

18) Your affiant(s) has learned through training and experience that person(s) usually possess guns, and/or weapons to protect their drugs from the police and their competition.
19) Your affiant(s) are aware through training and experience that persons involved in illegal drug sales utilize electronic communication devices such as beepers and cellular phones to facilitate their business.
20) Your affiant(s) have learned through training and experience that person(s) who sell controlled substances often possess drug paraphernalia such as but not limited to packaging materials and scale.
21) Your affiant(s) have learned through training and experience that subjects involved in the drug trade utilize their vehicles for transporting and/or concealing illegal drugs.

**105.** The Court does not know what was seized and even if it did, what was seized cannot be used to determine the sufficiency or probable cause.

**106.** 883 A.2d at 876.

training and expertise, basing probable cause on that alone. "While an officer's training and experience may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus."[107] Though the affidavit must state with particularity that there is corroborated evidence of some illegal activity, it may also include more general provisions about other illegal activity that could be found, that relates to the corroborating evidence, but is not necessarily corroborated itself.[108]

In the Ranken affidavit, paragraphs # 16–21 are not unsupported by information in the affidavit as Ranken claims; instead, they are more general statements related to other corroborated specific information. The officer received a tip, corroborated that tip with marijuana and drug dealing evidence found in the trash bags, and coupled with the evidence that drug dealing was likely occurring at 1307 Colin Drive, the officer applied his training and expertise to this evidence to establish that it was likely he would find evidence of contraband in the Ranken residence. The officer then enumerated this information into his affidavit, meeting the requirements for probable cause under law.

In sum, the challenged paragraphs based on the particularized probable cause to search Ranken's residence coupled with the statements of an experienced drug investigator under the totality of circumstances and within the four corners of the affidavit are not impermissible. They also are reasonable inferences for a detached judicial officer to make.

■ A "sub-issue" Ranken raises is whether there is sufficient nexus between the items found in his trash and the ability to search his apartment. The police were authorized to search for:

> Marijuana, any other controlled substances, scales, and packaging equipment/materials, any drug paraphernalia, United States Currency (USC, Money), business records and or documents indicative of drug transactions and or USC transactions, any electronic communication devices, any Guns, ammunition and/or weapons, photographs of USC and/or any physical evidence of illegal drug use of and or sales.[109]

The answer again is, clearly, yes. First, the informant said Ranken was selling drugs inside his apartment, including marijuana. Second, the items seized from his trash were consistent with that statement: (1) drug packaging, (2) marijuana, and (3) mail addressed to him.

This Court views this as providing sufficient nexus to search Ranken's apartment.[110]

**107.** *U.S. v. Schultz*, 14 F.3d 1093, 1097 (6th Cir.1994); *United States v. Rios*, 881 F.Supp. 772, (Although Ranken's defense quotes this concept from Schultz to support his propositions, they take the concept out of context and ignore the larger holding in both Schultz and Rios, where the court actually upheld the warrant and the fruits thereof under the "good faith" exception despite insufficient probable cause based only on the police officers knowledge and facts from an informant).

**108.** See also, *Fink v. State*, 817 A.2d 781 (Del.2003) (Warrant not overbroad when it requests seizure of all client files from attor-ney's home, despite the fact that fraud had only been corroborated as to two clients at the time of the affidavit to search). *Matter of Indep. Oil Prods., Inc.*, 444 A.2d 291, 296–298 (Del.Super.1982) (Need not identify particular records to be searched for).

**109.** Search warrant, p. 1.

**110.** See *State v. Hauser, supra; compare State v. Adams*, 13 A.3d 1162 (Del.Super.2008) where the court found no nexus between items seized in a car and the ability to search the defendant's residence.

### Ranken's Post Hearing Proffer

■ This matter was automatically scheduled for a suppression hearing as all suppression motions are. Shortly before the suppression hearing and after receiving and reviewing the State's response, it was clear, that no hearing was needed. Ranken's motion raises exclusively only legal, not factual arguments, to suppress the evidence seized upon the search warrant's

execution. It addresses only those legal issues discussed above, nothing more.

Accordingly, there was no need for a hearing. Ranken, after the hearing's cancellation, however, objected to its cancellation and made a proffer of what he would have introduced at the hearing.[111] None of these points were raised in Ranken's original motion as a basis for suppression. All

---

111. Nevertheless, please accept this letter as a proffer of what the defense would have established through testimony.

The following questions (and anticipated answers) would have been asked to Officer Travis McDermott (New Castle County Police):

—Did you ever seek permission from Delaware Sanitation Company to remove the contents within the trash can? [No]

—Did you have a search warrant or court order? [No]

—Did the trash can have a lid? [Yes]

—You lifted the lid, and removed three white plastic bags? [Yes]

—The plastic bags were sealed, tied off at the top with a draw string? [Yes]

—You transferred the three white bags to NCCPD? [Yes]

—You then untied the draw string and searched the contents of each of the three white bags? [Yes]

\* \* \* \* \* \*

The defense would have then called Shawna Gold, Mr. Ranken's girlfriend.

—Ms. Gold, where do you work? [Richards Layton and Finger]

—Where do you live? [1307 Colin Drive, Wilmington, Delaware 19804]

—Do you own or rent the house? [I own it]

—How long have you lived there? [Since 2008]

—Does Mr. Ranken live w/you? [Yes. He's my boyfriend.]

—Has he lived with you there since 2008? [Yes]

—I'm going to show you five Google Map ariel photos. Do you recognize what's depicted in each photo, by the marker with the letter "A," pointing to a house? {Yes, the marker depicted with the letter "A" on each of the photos, is pointing to my residence at 1307 Colin Drive.

See attached as **Exhibit "A"**.

—How many times per week is your trash collected? [Twice]

—Which company collects your trash? [Delaware Sanitation]

—Do you pay a monthly fee? [Yes. $29.50 per month]

—In preparation of today's hearing, did you speak with the President of Delaware Sanitation? [yes. I spoke with Deborah Medley].

—Did she send you a billing history dates back to 2008? [Yes]

—Did you bring that with you today? [Yes] See attached as **Exhibit "B"**.

—Did Ms. Medley also send you a separate statement reflecting how much you paid for the trash can? [Yes. I paid $70 for a 75 Gallon container with wheels and flip top lid]. See attached as **Exhibit "C"**.

\* \* \* \* \* \*

Counsel's oral argument would have sounded something like this:

I. Your Honor, there are three issues before the Court, ....the threshold issue being whether **under the Delaware Constitution,** our citizens should enjoy a reasonable expectation of privacy that police won't remove sealed plastic bags from their trash cans (that the citizen has paid a company to remove), and then transfer those bags to a police state, where the contents will then be inspected?

Contrary to the State's assertion that "the police cannot reasonably be expected to avert their eyes from evidence of a criminal activity that could have been observed by animals or any members of the public" .... the trash here was placed in a closed trash can, inside sealed white bags, and placed in front of the house for collection, by a service paid for by a resident. Letter from Thomas Foley, Esquire, to Hon. Jerome O. Herlihy (July 1, 2010).

are factual and irrelevant to the purely legal issues he raised.

Further, Ranken did not attack the affidavit of probable cause on the basis that the affiant police officer made a knowing and intentional false statement or one which was made with reckless disregard of the truth.[112] The proffered hearing testimony does not rise to that level nor does Ranken argue that it makes or would make a substantial preliminary showing of such entitling him to a hearing to endeavor to make such a showing. Nor does Ranken argue that his proffer is an effort to make the preliminary showing.

His post-hearing submission is an extension and elaboration, instead, of his argument that the Delaware Constitution should be read to preclude warrantless searches of trash containers. While the Court regrets the last minute cancellation of the hearing due to not being able to review the motion and response earlier, the Court would have ruled the post-hearing proffer inadmissible in open court had the hearing proceeded.

### Conclusion

For the reasons stated herein, David Ranken's motion to suppress is **DENIED**.

**IT IS SO ORDERED.**

---

**112.** *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).