**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

STATE OF DELAWARE,

v.

PATRICIA R. KOSTYSHYN.

)
)
)
)
)
)
)
)

C.A. No.: 2309014065

## MEMORANDUM OPINION

Defendant Patricia R. Kostyshyn brings this motion in accordance with Court of Common Pleas Criminal Rule 12(b)(3) to suppress all evidence gathered on Defendant's property pursuant to a search warrant executed on September 12, 2023. The Court conducted a hearing on Defendant's motion on March 19, 2025.

## I.    FACTS

Defendant was originally charged with sixteen (16) offenses, including fourteen (14) counts of Animal Cruelty and two other animal-related offenses.[1] Before Defendant was charged, the State obtained seven (7) search warrants in connection to violations of New Castle County Property Maintenance Code.

On September 5, 2023, New Castle County Code Enforcement Constable Frank Walsh submitted a search warrant application and probable cause affidavit (the "Affidavit") to a magistrate in the Justice of the Peace Court. In the Affidavit,

---

[1] The State entered a *nolle prosequi* on fifteen (15) of the sixteen (16) charges but is pursing the sole remaining animal cruelty charge.

Constable Walsh alleged that Defendant's property was in violation of the New Castle County Maintenance Property Code by having open storage of rotting food, multiple flies, unkept kitty litter containers, blocked egresses throughout the unit, and the emission of strong pungent odors. Constable Walsh asserted that the property had ongoing code violations dating back to September 21, 2021, and listed the dates upon which prior warrants were executed on the property.[2] The most recent warrant had been issued a week prior on August 28, 2023. Notably, Constable Walsh did not point to any observations or other information to suggest that the property continued to be in violation of the code after August 28th. Nevertheless, the magistrate issued a warrant, which was executed on September 12, 2023 (the "Warrant").

Defendant moves to suppress the photographs and videotapes made in the execution of the Warrant on the grounds that it was based on stale information insufficient to prove probable cause of a crime or that evidence of a crime was present at Defendant's property.

On the other hand, the State argues that the August 28th search, which was referenced in the Affidavit, is evidence of an ongoing and continuous crime. In other words, the State contends that the facts in the Affidavit are not stale because they still existed at the time of the application for the Warrant.

---

[2] According to the Affidavit, search warrants were obtained on September 1, 2021; May 2, 2023; May 4, 2023; May 9, 2023; June 12, 2023; and August 28, 2023.

## II.    DISCUSSION

On a motion to suppress challenging a warrant's validity, the defendant bears the burden of establishing, by a preponderance of the evidence, that the challenged search warrant or seizure was unlawful.[3] A reviewing court will give great deference to the magistrate that determined there was probable cause and it "will not be invalidated by a hyper-technical, rather than a common sense, interpretation of the warrant's affidavit."[4] However, that "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusion."[5]

Defendant asserts that the warrant authorizing the search of her residence is not supported by probable cause as required under the Delaware Constitution, codified in Title 11, Sections 2306 and 2307 of the Delaware Code. Section 2306 provides that an application for a search warrant must state "that the complainant suspects that such persons or things are concealed in the house, place, conveyance, or person designated in the search warrant application and shall recite the facts upon which suspicion is founded."[6] Section 2307 provides that the magistrate, or issuing judge, may only issue a warrant upon the finding of probable cause.

---

[3] *Miller*, 2009 WL 162238, at *2.
[4] *U.S. v. Ventresca*, 380 U.S. 102, 109 (1965); *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984); *Cooper v. State*, 228 A.3d 399, 404 (Del. 2020).
[5] *Rivera v. State*, 7 A.3d 961, 967 (Del. 2010).
[6] 11 *Del. C.* § 2306.

3

The Delaware Supreme Court has held that § 2306 and § 2307 "contemplate a 'four-corners' test for probable cause."[7] In accordance with that standard, "sufficient facts must appear on the face of the affidavit so that an appellate court can verify the factual basis for the judicial officer's determination regarding the existence of probable cause."[8] "The requirement that all facts relied upon by the magistrate be in a written affidavit ensures that the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories."[9] Therefore, an affidavit in support of a search warrant must set forth facts adequate to warrant a reasonable person to believe that an offense has been committed and that seizable property would be found in a particular place or on a particular person.[10] In addition, the alleged facts must be such "as to allow the magistrate to make an independent evaluation of the matter."[11]

However, when it comes to staleness, "[p]robable cause must be based on current information, not conjecture, for stale information will not support a finding of probable cause."[12] It is not sufficient that at some prior time there existed circumstances that would have warranted the search in question.[13] Indeed, the

---

[7] *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).
[8] *Id.*
[9] *Pierson v. State*, 338 A.2d 571, 573 (Del. 1975).
[10] *State v. Ranken*, 25 A.3d 845, 862 (Del. Super. 2010).
[11] *Franks v. Delaware*, 438 U.S. 154, 165 (1978).
[12] *Sissons*, 903 A.2d at 297.
[13] *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984).

4

"validity of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and this issuing of the affidavit."[14] To determine if "information has become stale due to an impermissible delay in securing a warrant depends upon all the facts viewed in a flexible and practical manner."[15]

The State counters Defendant's argument by relying on two cases, *Sisson v. State*[16] and *State v. Miller*.[17] In *Sisson v. State,* law enforcement obtained a warrant to search the defendant's residence for evidence of child pornography based upon a tip from the defendant's email provider.[18] As a result of the search, the defendant was arrested on an array of child pornography charges.[19] The defendant moved to suppress the evidence seized during the search, arguing, *inter alia*, that the warrant was predicated on stale information, as it was not possible to determine the duration of time between when the alleged offense occurred and when law enforcement was made aware of it.[20]

Affirming the trial court's ruling, the Delaware Supreme Court found that the information was not stale because in the underlying affidavit, law enforcement

---

[14] *Sissons*, 903 A.2d at 297.
[15] *State v. Barnes*, 2025 WL 327427, at *4 (Del. Super. Ct. Jan. 29, 2025).
[16] 903 A.2d 288 (Del. 2006).
[17] 2009 WL 1622388 (Del. Com. Pl. June 10, 2009).
[18] *Sission v. State*, 903 A.2d 288, 294 (Del. 2006).
[19] *Id.* at 295.
[20] *Sisson*, 903 A.2d at 297-298.

explained that those who collect child pornography typically retain it for a long time.[21] That statement, coupled with the "fair probability" that the email provider had notified law enforcement within days of the offense occurring, rendered the issuing magistrate's decision to grant the warrant reasonable. [22]

Unlike *Sisson*, in this instance, the Constable never gave such a statement that would lend credit to the Magistrate's ability to believe that the code violations were still in existence. The affidavit of probable cause contained only dates of the execution of other warrants and what law enforcement found upon the execution of those warrants. If the Constable had investigated, such as going to Defendant's residence and talking to a neighbor(s), observing an odor, or seeing that the code violations had not been remedied and stated so in the affidavit, there would be no issue. Or if, like the law enforcement affiant in *Sission*, the Constable had explained why there was a reason(s) to believe the code violations were still in existence, the affidavit of probable cause may be sufficient. However, the Constable took no such action. Therefore, the State's reliance on *Sisson* is misplaced.

The same is true for the State's reliance on *State v. Miller*.[23] In *Miller*, the defendant was charged with code violations after law enforcement executed two

---

[21] *Id.* at 297-298.
[22] *Id.* at 299.
[23] 2009 WL 1622388 (Del. Com. Pl. June 10, 2009).

6

search warrants within a month of each other.[24] The defendant moved to suppress the items seized, arguing that the affidavit of probable cause for the second search warrant was too remote in time to support a finding of probable cause because it was largely based upon the findings of the first warrant.[25] The court disagreed, and found that the second warrant's affidavit of probable cause contained statements from law enforcement that they had direct knowledge that the defendant had done very little work on the property to bring it into compliance and having viewed the property from the street, they observed that the code violations continued to exist.[26] The affidavit also referenced calls from citizens that complained about the defendant's property.[27] Those statements, the court reasoned, were sufficient to support a finding of probable cause to issue the warrant.[28]

In the present case, the Affidavit specifies that the property at issue has a history of code violations, detailing the execution of previous warrants during which the affiant had observed numerous property code violations, namely that the property was unsanitary, and the conditions were unfit for living. Outside of that, the affiant gave no information as to his current knowledge of whether any work had been done to the property to bring it into compliance.

---

[24] *Id.* at *1.

[25] *State v. Miller*, 2009 WL 1622388, at *1-2 (Del. Com. Pl. June 10, 2009).

[26] *Id.* at *3.

[27] *Miller*, 2009 WL 1622388, at *2.

[28] Del. Const. art. I, § 6; *State v. Ranken*, 25 A.3d 845, 853 (Del. Super. 2010).

The State argues that the August 28th search of the property *is* evidence of an ongoing and continuous crime. That argument, taken to its logical conclusion, would mean that once a court grants a warrant for the search of a premises, the State can come back time an again, without any change in circumstances or additional information, to obtain additional warrants. However, the very purpose of an affidavit of probable cause is to establish that facts *currently* exist to support the belief that a crime has occurred. The affidavit should indicate that the items related to the crime will likely be found at the location specified for the search. If the minimum requirement of the State was to set forth facts in an affidavit based upon findings from a previous issued warrant, even if only a few days has passed, it would self-defeat the spirit of the Constitutional requirements codified in § 2306 and § 2307.[29]

For those reasons, the Court finds that the information set forth in the Affidavit was stale and the resulting Warrant lacked probable cause to believe a crime had occurred. As such, this Court cannot find that the magistrate's determination that probable cause existed was sufficiently supported.

---

[29] *See State v. Rankin*, 25 A.3d 845, 855 (Del. 2010) ("Delaware [has a] long history of protecting its citizens, the Delaware Constitution requires actual probable cause and not a good faith basis for probable cause to secure a valid Warrant in Delaware."); *Dorsey v. State*, 761 A.2d 807, 820 (Del. 2000).

**THEREFORE, IT IS HEREBY ORDERED**, that Defendant's Motion to Suppress the evidence gathered from the execution of the Warrant on September 12, 2023, is **GRANTED**.

**IT IS SO ORDERED** this 5th day of May, 2025.

The Honorable Carl C. Danberg
Chief Judge