# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,          )
                            )
                            )
                            )
    v.                      )     I.D. No. 1604012801
                            )     Cr. A. Nos. 16-05-1029, etc.
                            )
JOSE I. GUARDARRAMA         )

Submitted: October 31, 2016
Decided: December 14, 2016

## MEMORANDUM OPINION & ORDER

*Upon Defendant Jose I. Guardarrama's Motion to Suppress,*
**DENIED**.

Barzilai K. Axelrod, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for the State of Delaware.

Joseph W. Benson, Esquire, Law Offices of Joseph W. Benson, P.A., Wilmington, Delaware, for Defendant Jose I. Guardarrama.

**WALLACE, J.**

## I. INTRODUCTION

Defendant Jose I. Guardarrama ("Guardarrama") was arrested on April 18, 2016 for illegal possession of a firearm, ammunition, and drug paraphernalia. Those items were found during the execution of a search warrant at his home located at 1615 Tulip Street in the City of Wilmington.

The investigation of Guardarrama commenced when a confidential informant notified the New Castle County Police Department that Guardarrama was involved in the sale and distribution of marijuana. To further the investigation and corroborate the informant, New Castle County detectives took Guardarrama's discarded trash bags from a trash container placed near the front of the 1615 Tulip Street residence on three different designated trash collection days.

Based, in part, on the evidence from the trash pulls, the detectives applied for a search warrant for 1613 and 1615 Tulip Street on April 15, 2016.[1] The search was executed on April 18, 2016. The police found: (a) a .380 semi-automatic Walther firearm; (b) matching ammunition; (c) drug paraphernalia, including scales and a marijuana grinder; (d) documents with Guardarrama's name; (e) six

---

[1] The State and Guardarrama agree that the two addresses constitute one residence that uses the 1615 Tulip Street address as its identifier. *See* Def.'s Mot. to Suppress at ¶ 2, *State v. Guardarrama*, I.D. No. 1604012801 (Del. Super. Ct. Aug. 1, 2016) (D.I. 14); State's Resp. at ¶ 1, n.1, *State v. Guardarrama*, I.D. No. 1604012801 (Del. Super. Ct. Aug. 16, 2016) (D.I. 18). For ease of reference, the house will be referred to hereinafter as just 1615 Tulip Street.

grams of marijuana; and, (f) .7 grams of marijuana-tainted material.[2] Guardarrama was indicted for two counts of Possession of a Firearm by a Person Prohibited,[3] one count of Possession of Ammunition by a Person Prohibited,[4] and one count of Possession of Drug Paraphernalia.[5]

Guardarrama now asks the Court to grant his motion to suppress evidence the police obtained during the search of 1615 Tulip Street. He argues that the search warrant for the residence was fatally flawed because it contained information obtained by an improper seizure of his trash. For the reasons below, his motion is **DENIED**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The structure at 1615 Tulip Street is a single-family house located between an empty yard and a parking lot.[6] This block of Tulip Street lies between South Dupont Street and South Clayton Street, an unusual span otherwise devoid of any homes.

---

[2]   State's Resp. at ¶ 14.

[3]   *See* DEL. CODE ANN. tit. 11, §§ 1448(a)(1) & (9) (2015) (possession of deadly weapons by a person prohibited). Guardarrama has multiple prior drug and felony convictions.

[4]   *See id.* at § 1448(a)(1) (possession of ammunition by a person prohibited).

[5]   *See* DEL. CODE ANN. tit. 16, § 4771 (2015) (possession of drug paraphernalia).

[6]   St.'s Ex. 2, Supp. Hr'g, *State v. Guardarrama*, I.D. No. 1604012801 (Del. Super. Ct. Aug. 23, 2016).

During the week of March 14, 2016, a confidential informant notified the New Castle County Police Department that Guardarrama was involved in selling marijuana and had been seen with "pounds" of it.[7] The confidential informant also shared that Guardarrama resided somewhere on Tulip Street with his girlfriend, that both Guardarrama and his girlfriend were close in age, and that, to distribute the marijuana, Guardarrama drove a dark-colored Mercedes that was registered in his name.[8]

Based on this information New Castle County Police Detective Jared Miller ran a Delaware Criminal Justice Information Services ("CJIS") search for Guardarrama. CJIS revealed that Guardarrama had "an extensive drug history", including multiple marijuana-related charges.[9] The CJIS report listed Guardarrama's last known address as 8 Golden Acres Drive, not Tulip Drive. But it also showed that: Guardarrama's girlfriend had been the victim of a burglary at 1615 Tulip Street; that they were, in fact, close in age; and, that Guardarrama's girlfriend had been found in possession of marijuana during a 2012 traffic stop.[10]

---

[7]    Def.'s Mot. to Suppress, Search Warrant App. & Aff. at ¶ 3.

[8]    *See id.* at ¶ 3.

[9]    *See id.* at ¶ 4.

[10]    *See id.* at ¶ 7.

Later that same week, Det. Miller conducted a property check of 1615 Tulip Street and found two dark-colored Mercedes with Delaware license plates 325218 and 356380 parked in front of the residence.[11] Det. Miller conducted a CJIS inquiry of both license plates and found them to be registered to Guardarrama at the Golden Acres Drive address.[12] While at 1615 Tulip Street, Det. Miller also saw a brown trash receptacle at the southwest corner of the residence. He contacted Wilmington Department of Public Works and learned that Friday was the trash pickup day for that address.[13]

In the early morning hours of Friday, March 18, 2016, Det. Miller and Det. Christopher Potter (also of the New Castle County Police Department) went to 1615 Tulip Street to collect the discarded trash from the receptacle that Det. Miller observed earlier in the week.[14] They saw the same brown trash can seen earlier in the week in front of the residence.[15] The receptacle was no longer against the house. Instead, it was pushed out from the house and was on the far edge of the

---

[11]     *See id.* at ¶ 12.

[12]     *See id.* at ¶ 12.

[13]     *See id.* at ¶ 15.

[14]     *See id.* at ¶ 16.

[15]     *See id.* at ¶ 16.

public sidewalk area.[16] The detectives removed three large black trash bags from the receptacle and one from the ground next to the receptacle. They later searched the contents of the bags at a secure location.

In the bags taken on March 18, Det. Miller found "numerous vacuum food saver style bags that contained trace amounts of a green leafy plant like substance consistent with marijuana."[17] That substance field-tested positive for marijuana. In the same bags, Det. Miller found a small piece of a green leafy substance that field-tested positive for marijuana and mail addressed to the "Current Residents" of 1615 Tulip Street.

Two Fridays later, during the early morning hours of April 1, 2016, the detectives again went to 1615 Tulip Street to collect additional trash for the investigation. That morning, the detectives collected two black trash bags from the receptacle and three black trash bags from the ground next to it. In these bags, they found an airline boarding pass for Guardarrama dated March 24, 2016. They also found "trace amounts of a green leafy plant like substance consistent with

---

[16]     While there was conflicting testimony regarding the location of the garbage can on the days of the trash pulls, the Court finds that the more specific testimony regarding its location on the actual days of the pulls most credible. After reviewing the record, there is no doubt that no trespass onto the property or curtilage of 1615 Tulip Street occurred when police took the trash from the receptacle.

[17]     Def.'s Mot. to Suppress, Search Warrant App. & Aff. at ¶ 19.

-5-

marijuana wrapped in brown paper."[18]  That substance field-tested positive for marijuana.

On the following Friday, April 8, 2016, the detectives visited Tulip Street in the early morning hours to collect additional trash from the curb at 1615.  That morning, they collected three black trash bags from the receptacle and two black trash bags from the ground next to it.  In those bags, the detectives found a piece of mail addressed to Guardarrama's girlfriend.  They also found "a small sandwich style bag which contained trace amounts of a green leafy plant like substance consistent with marijuana."[19]  That substance field-tested positive for marijuana.

With the confidential informant's corroborated statements and the evidence from the trash pulls, the police applied for a search warrant for 1615 Tulip Street on April 15, 2016.  The Justice of the Peace approved the warrant and the New Castle County Police detectives executed it on April 18, 2016 at around 2:00 p.m.

Guardarrama was exiting 1615 Tulip Street when the police arrived.  During the execution of the warrant, the police located: (a) one semi-automatic .380 Walther firearm; (b) forty-seven rounds of .380 ammunition; (c) drug paraphernalia, including a table top scale, a grinder, and a digital scale; (d) documents bearing Guardarrama's name; and (e) 6.7 total grams of

---

[18]     *Id.* at ¶ 29.

[19]     *Id.* at ¶ 33.

marijuana.[20]  Guardarrama was arrested at 1615 Tulip Street.  He later admitted that he did live at that residence with his girlfriend and that there were about two grams of marijuana therein.  He told the police that his girlfriend had the gun for protection.

Guardarrama now claims that the three trash pulls conducted by Dets. Miller and Potter were improper under the federal and Delaware constitutions.  In turn, he says, evidence derived from those pulls should not have been considered when the magistrate determined probable cause for the issuance of the search warrant. Guardarrama contends that without the evidence from the trash pulls, the warrant application lacks probable cause.  He argues, therefore, that the subsequent search of his home, the seizure of all physical items therefrom, and his later statement to the police should be suppressed.

## III.  DISCUSSION

### A. Standard of Review and Guardarrama's Claims

It is well-settled that "[o]n a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of establishing that the challenged search or seizure was unlawful."[21]  The Fourth Amendment requires that "no

---

[20]     St.'s Resp. at ¶ 14.

[21]     *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Ct. Mar. 11, 2005), *aff'd*, 903 A.2d 288 (Del. 2006). *Cf. Hunter v. State*, 783 A.2d 558, 560 (Del. 2001) (clarifying that, in Delaware, for "a motion to suppress evidence seized in a *warrantless* search, the rule . . . [is] [t]he State bears the burden of proof.") (emphasis in original).

warrants shall issue, but upon probable cause."[22] Protection from such seizures is provided under the Fourth Amendment to the United States Constitution and in Article I, § 6 of the Delaware Constitution.[23] Delaware law contemplates a "four-corners" test for determining whether a search warrant was issued on probable cause.[24] This means "sufficient facts must appear on the face of the affidavit so that a reviewing court can verify that probable cause existed for issuance of the warrant."[25] A magistrate's finding of probable cause in a situation like this – *i.e.* that there is a "fair probability" that contraband or evidence of a crime will be found in a particular place – should be based on a "totality of the circumstances."[26] And a reviewing court must ensure "that the magistrate had a substantial basis for concluding probable cause existed."[27] When doing so, the

---

[22]    *See* U.S. CONST. amend. IV.

[23]    *See* DEL. CONST. art. I, § 6. *See also State v. Moore*, 997 A.2d 656, 663 (Del. 2010) ("The right of Delaware citizens is further secured by Article I, § 6 of the Delaware Constitution.").

[24]    *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000).

[25]    *State v. Ada*, 2001 WL 660227, at *5 (Del. Super. Ct. June 8, 2001) (internal citations omitted).

[26]    *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

[27]    *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).

reviewing court pays "great deference" to the issuing magistrate's probable cause determination.[28]

In his motion, Guardarrama contends that insufficient probable cause is established within the four corners of the search warrant for 1615 Tulip Street. Guardarrama posits two bases for this: (1) that the anonymous tip alone did not provide any information to the New Castle County Police Department that was not already known to the public; and (2) that "the information the tip supplied regarding selling marijuana was corroborated only by information gained from the trash."[29] Guardarrama goes on to argue that he had a reasonable expectation of privacy in the contents of the trash bags left at the curbside of 1615 Tulip Street, and that the seizure of those bags constituted an improper warrantless intrusion.[30] As such, he contends that the information contained in the warrant based upon the contents of the trash pulls should be excised from the warrant. According to Guardarrama, if that information is excised, the four corners content of the warrant surely does not establish probable cause under the totality of the circumstances left. In turn, he says, all evidence obtained from the execution of the search warrant should be suppressed.

---

[28]    *Id.*

[29]    Def.'s Mot. to Suppress at ¶¶ 4(a), 14.

[30]    *Id.* at ¶¶ 15-19.

**B. Guardarrama Did Not Have a Reasonable Expectation of Privacy in the Trash Seized by the New Castle County Police Department.**

*1. The Trash Was Not Located Within the Curtilage of 1615 Tulip Street.*

If the trash can and the area around it that the detectives seized the trash from on three occasions was within the curtilage of 1615 Tulip Street, then its collection might have been a prohibited intrusion.[31] So the Court first addresses whether or not the location of the trash was on the property of 1615 Tulip Street or within its curtilage.[32]

Courts look to four factors when determining if the area where Guardarrama's trash can was located was within the curtilage of 1615 Tulip Street: (1) "[t]he proximity of the area [that is claimed to be curtilage] to the home;" (2) "[w]hether the area is in an enclosure surrounding the home;" (3) "[h]ow the

---

[31] *See, e.g., State v. Ranken*, 25 A.3d 845, 861 (Del. Super. Ct. Oct. 19, 2010), *aff'd*, 2011 WL 2089603 (Del. May 24, 2011) ("This Court is *not* deciding at this moment an issue which some other courts have addressed. There appears to be an issue in some cases of a warrantless search being allowed only 'outside' the curtilage or at some distance from the residence or particular locations 'inside' the curtilage. This Court's holding *only* addresses the search of a trash container left at curbside on a public sidewalk.") (emphasis in original) (internal citations omitted).

[32] Under these circumstances, disposition of this issue addresses any new (or revived) gloss of this particular area of search and seizure jurisprudence that Guardarrama tries to apply. *See* Def.'s Mot. to Suppress at ¶¶ 23-27; Def.'s Supp. to Mot. to Suppress, at 1-4, *State v. Guardarrama*, I.D. No. 1604012801 (Del. Super. Ct. Oct. 31, 2016). The trespass theory he urges – citing *United States v. Jones*, 132 S.Ct. 945 (2012) and *Florida v. Jardines*, 133 S.Ct. 1409 (2013) – is simply inapplicable when the place from with the seizure occurs is not a private place intruded upon. Nor does it bestow a privacy interest in items discarded with the specific intent that a third-party will carry the refuse away permanently with no further control, express or implied, exercised by those discarding them.

-10-

[resident] uses the area;" and, (4) "[t]he efforts undertaken by the [resident] to protect the area from observation."[33] The Court uses these factors here.

First, the proximity of the trash can and bags to the house itself when their contents were seized would place them outside the "curtilage" protection. The public sidewalk where the trash receptacle was located during the trash pulls abuts the place of residence.[34] And it runs parallel to the front elevation of the house. But trash receptacle was placed on the outer curb of the public sidewalk away from the house for trash pickup on the days when the police seized the trash bags.[35] Thus, while it is close in proximity to the house itself, it was clearly placed in a public area.

Second, was the area where the trash can was located enclosed? It was not. The police removed the trash from the streetside edge of an open public sidewalk.

Third, the Court considers the nature of the uses to which this questioned area is typically put. The area of the sidewalk on which the trash and trash can sat when seized was a public thoroughfare. Guardarrama's girlfriend testified she kept

---

[33]    *State v. Bradley*, 2011 WL 1459177, at *13 (Del. Super. Ct. Apr. 13, 2011), *aff'd*, 51 A.3d 423 (Del. 2012) ("In deciding whether an outbuilding should be included within the curtilage protection, the courts have generally considered four factors: 1. [t]he proximity of the area to the home [or business]; 2. [w]hether the area is in an enclosure surrounding the home; 3. [h]ow the owner uses the area; and 4. [t]he efforts undertaken by the owner to protect the area from observation.") (citing *United States v. Dunn*, 480 U.S. 294, 301 (1987)).

[34]    St.'s Ex. 2, Supp. Hr'g.

[35]    St.'s Exs. 7 & 8, Supp. Hr'g.; St.'s Identifications A & B, Supp. Hr'g, *State v. Guardarrama*, I.D. No. 1604012801 (Del. Super. Ct. Aug. 23, 2016).

-11-

the trash indoors until trash pickup day, only then placing it out for pickup. There is no evidence Guardarrama or his girlfriend kept any personal possessions in the area of the sidewalk that the detectives removed the trash from. Thus, this area was a public use area.

Lastly, were any steps taken to protect the area from observation by the general public? Aside from placing some bags in the trash can itself, Guardarrama took no steps to protect the trash bags from public view once they were placed on the sidewalk for pick up. He and his girlfriend may have taken such steps in the days leading up to trash pickup days, but that ended when they placed the bags in a public area open to all. They did nothing to prevent any passerby from observing or interacting with the trash bags.

All four factors establish that the trash can and trash bags were outside the curtilage of 1615 Tulip Street. As no trespass occurred, the Court turns to whether Guardarrama had a reasonable expectation of privacy in his discarded garbage.

### 2. *Guardarrama Had No Reasonable Expectation of Privacy in the Seized Trash.*

A police officer's warrantless search of trash containers left curbside on a public sidewalk is permissible under both the United States and Delaware

Constitutions.[36] And the warrantless seizure of garbage left for collection in a public area offends neither.[37]

As the United States Supreme Court explained:

It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have had no reasonable expectation of privacy in the inculpatory items that they discarded.[38]

In so holding, the Supreme Court applied the two-part test for a reasonable expectation of privacy that our Delaware courts have adopted. Thereunder: (1) "a person [must] exhibit[] an actual (subjective) expectation of privacy" and (2) the

---

[36] *Ranken*, 25 A.3d at 852-55, 861 ("In *California v. Greenwood*, the United States Supreme Court held that the Fourth Amendment to the U.S. Constitution does not prohibit the warrantless search and seizure by police of garbage left for collection in a location accessible to the public. The analysis necessary for determining Fourth Amendment protections is "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize 'reasonable.' " Thus, the search of the trash would only violate Ranken's rights under the Fourth Amendment of the United States Constitution if he manifests a subjective expectation of privacy that society recognizes his expectation as objectively reasonable. . . . *While Delaware has a history of expanding and jealously guarding the rights of its citizens in different areas of constitutional law, expanding the rights of our citizens in this discrete situation, nevertheless, is not warranted based on precedent and policy.*") (internal citations omitted) (emphasis added), *aff'd*, 2011 WL 2089603 (Del. May 24, 2011) (affirming this Court's judgment "on the basis of and for the reasons assigned by" this Court).

[37] *California v. Greenwood*, 486 U.S. 35, 40 (1988); *Ranken*, 25 A.3d at 861.

[38] *Greenwood*, 486 U.S. at 40 (internal citations omitted).

"expectation [is] one that society is prepared to recognize as [objectively] reasonable."[39] Thereunder, the United States Supreme Court found that by placing garbage in a public area one did not enjoy a reasonable expectation of privacy in its contents. And thereunder, this Court has held "that a person had no reasonable expectation of privacy in trash that was readily accessible to the public, evincing its abandonment."[40]

Here, Guardarrama's trash can where the bags were seized from was away from the side of the house on the outer curb of a public sidewalk in front of 1615 Tulip Street. The trash bags were both in the trash can and on the ground next to it. Guardarrama (or his girlfriend) had placed the trash there for the city to come

---

[39]    See Rodriguez v. State, 2013 WL 5494720, at *1 (Del. Sept. 30, 2013) ("In order to raise a Fourth Amendment claim, a defendant must have a reasonable expectation of privacy . . . .") (citing Katz v. United States, 389 U.S. 347, 361 (1967)). See also, e.g., State v. Howard, 728 A.2d 1178, 1181 (Del. Super. Ct. Oct. 19, 1998) ("The analysis of whether or not a reasonable expectation of privacy exists . . . in the context of an alleged violation of . . . the Fourth Amendment, derives from the rule set forth in Justice Harlan's concurring opinion in Katz v. United States. That rule, which has been universally adopted by subsequent cases as the prevailing rule of law, states that a "reasonable expectation of privacy" in conversations that may be protected from interception by individuals not parties to the conversation exists only where "a person . . . exhibit[s] an actual (subjective) expectation of privacy and [where] that . . . expectation [is] one that society is prepared to recognize as [objectively] 'reasonable.'") (alteration in original) (citing Katz, 389 U.S. at 361).

[40]    State v. Grossberg, 1998 WL 283491, at *4 (Del. Super. Ct. Mar. 18, 1998) ("Furthermore, the Supreme Court has held that a person has no reasonable expectation of privacy in trash that was readily accessible to the public, evincing its abandonment. "[T]he intent to relinquish ownership and abandon trash is tantamount to 'throwing away' a subjective expectation of privacy in it that society accepts as objectively reasonable." Thus, Grossberg abandoned any expectation of privacy when the discarded items became readily accessible to the public.") (internal citations omitted) (alteration in original); Ranken, 25 A.3d at 852 (citing United States v. Dunn, 480 U.S. 294 (1987)) ("[T]here is no reasonable expectation of privacy with regard to trash outside the curtilage of the property.").

and take away on Friday mornings. The police took the bags from this location on the three Fridays when they engaged in the trash pulls. They took only items that were "readily accessible to the public, evincing [their] abandonment."[41]

Guardarrama had no reasonable expectation of privacy in anything placed in the trash bags either in or near the trash receptacle at the public curb. Because he had no reasonable expectation of privacy, the trash pulls were wholly permissible. As was inclusion of the evidence the police gleaned from these trash pulls in the search warrant's affidavit of probable cause authorizing the resulting search of 1615 Tulip Street. Those averments in the affidavit of probable cause reciting what was found in Guardarrama's trash were properly considered when the magistrate issued the search warrant. And with those averments, there certainly was a "fair probability" set forth in the warrant application that contraband or evidence of a crime would be found in 1615 Tulip Street.

## IV.  CONCLUSION

For the reasons set forth above, Guardarrama's Motion to Suppress any information derived from the trash pulls is **DENIED**.

**IT IS SO ORDERED.**

_____
**Paul R. Wallace, Judge**

Original to Prothonotary

---

[41]    _Grossberg_, 1998 WL 283491, at *4 (citing _Greenwood_, 486 U.S. at 41).

-15-